Nov. Term,<br>
1858.<br>
<hr>
JONES<br>
v.<br>
THE STATE.

---

## JONES *v.* THE STATE.

Where the evidence is not in the record, no question arises upon the overruling of a motion for a new trial, which is not presented under exceptions previously taken.

On change of venue from the Court in which an indictment was found, a transcript of the proceedings in that Court, accompanied by the original indictment and other papers in the cause, was transmitted to the Court to which the cause was taken. *Held,* that this was all that the statute (2 R. S. p. 371, § 78) requires.

Where the circuit judge did not appear on the first day of the term, the proper officers appointed a judge to hold the Court in his absence, and the appointee was sworn and assumed to act under such appointment. *Held,* that this was right.

And a misunderstanding existing in the county, as to the day on which the term was to commence, *held,* that such judge might adjourn the Court to a subsequent day in vacation.

The indictment in this case charges that "a man calling himself *L. J. Jones,* whose *given* name is to the grand jurors unknown," &c. *Held,* that the jurors took *"Jones"* to be the true surname of the defendant, and only meant to allege that the name indicated by the initials *L. J.* was unknown. *Held,* also, that there is no objection to this form of statement.

The indictment, in this case, charged that the defendant "had in his possession one hundred false, forged, and counterfeit five dollar bills, purporting to be genuine five dollar bank bills on the *North-Western Bank of Virginia,* payable to bearer on demand, at *Jeffersonville,* and signed by *D. Lamb,* cashier, and *J. C. Campbell,* president, of which false, forged, and counterfeit bills, the following is a substantial copy of one." Here followed a copy. *Held,* by PERKINS, J., to be good under the statute; but a majority of the Court held it to be too uncertain.

The Court may permit experts to testify to the false character of bank bills,

Nov. Term,
1858.

JONES
v.
THE STATE.

in such cases, without requiring proof that there is a bank in existence issuing genuine bills, of which those in question might be counterfeits.

An affidavit for a continuance of this cause to procure testimony, alleged that the defendant could prove by a person then residing in *Cincinnati*, *Ohio*, that he received the bills from him, without knowing them to be counterfeit; but it did not allege when, where, or under what circumstances, the reception took place. *Held*, that the affidavit was too indefinite, especially as the witness resided out of the jurisdiction, and there was no proposition to take his deposition.

The affidavit also named a person whose testimony was wanted to prove good character; but it did not state that the same fact could not be proved by other witnesses. *Held*, insufficient.

Thursday,
December 16.

APPEAL from the *Blackford* Circuit Court.

PERKINS, J.—Indictment against *Jones* for having in his possession counterfeit money, with intent to put the same in circulation. Trial, conviction, and sentence to the penitentiary.

There was a motion for a new trial overruled; but as the evidence is not in the record, no question arises upon that motion, that is not presented under previous exceptions taken to rulings of the Court during the progress of the cause.

A change of venue was taken by the defendant from the *Delaware* Circuit Court, in which the indictment was found, to the *Blackford* Circuit Court. A transcript of the proceedings in the *Delaware* Circuit Court, accompanied by the original indictment and other papers in the cause, was transmitted to the *Blackford* Circuit Court, but not a certified copy of the indictment, as recorded in the *Delaware* Circuit Court. We think everything required by the statute was transmitted to the *Blackford* Circuit Court. 2 R. S. p. 371, § 78.

The regular term of the *Blackford* Circuit' Court commenced on the 25th of *October*, on which day the judge of the circuit did not appear, nor did he during the term, and the proper officers appointed Mr. *Howell* as judge to hold the Court in his absence, who, says the record, was sworn and assumed to act under the appointment. This was right. *Case* v. *The State*, 5 Ind. R. 1.

Owing to a misunderstanding in the county as to the day on which the term of the Court was to commence,

parties, &c., were not in attendance, and the judge, on the first day, adjourned the term till the 8th of *November* following. This he was authorized by the statute to do. Acts of 1855, p. 70, § 1. See *Porter* v. *The State*, 2 Ind. R. 435.

Objections are made to the indictment. It charges that "a man calling himself *L. J. Jones*, whose given name is to the grand jurors unknown," &c. Now, it is plain that the jurors took the surname, *Jones*, to be the true name of the defendant, and only meant to assert that his given name, indicated by the initials, *L. J.*, was to them unknown. We see no objection to this form of statement.

It is also objected that the indictment is too uncertain. The indictment, it must be recollected, is not for passing counterfeit money, but for having it in possession, with intent, &c.; and it is by no means clear that an indictment for such an offense should describe the bills with the same minuteness as is required in an indictment for passing counterfeit bills. See *Engleman* v. *The State*, 2 Ind. R. 91; *Dillon* v. *The State*, 9 *id.* 408; and 2 R. S. p. 357. The indictment in this case charges that the defendant "had in his possession one hundred false, forged, and counterfeit five dollar bills, purporting to be genuine five dollar bank bills on the *North-Western Bank of Virginia*, payable to bearer on demand, at *Jeffersonville*, and signed by *D. Lamb*, cashier, and *J. C. Campbell*, president, of which false, forged, and counterfeit bills, the following is a substantial copy of one." Here follows a copy, which, for aught that appears, the evidence may have shown to be strictly accurate.

But we are unable to perceive any valid reason why such exact correspondence between the description in the indictment and the bill in proof should be necessary, nor why the indictment should contain a complete description of the bills. In an indictment for passing counterfeit money, the reason for such accurate description is weighty; because the passage of every single bill may constitute a separate offense, and it is important, therefore, that the indictment for each should fully identify the bill, that the

party may know which he is defending against in the given case, and, also, be protected by the record from a second prosecution for the same offense. So, where a statute makes the offense to consist in having in possession, certain, or a given number of bills, the same reasons may operate to a greater or less extent.

But our statute makes the offense to consist in having false, forged, &c., bills in possession, &c., and there could not be two indictments founded upon different portions of the bills, at the same time in possession. It is immaterial how many or how few the number of bills may be, or on what banks; the possession with intent to put in circulation, constitutes the essence of the single crime which the statute creates upon the facts. The questions, under our statute, as to identity or difference of crimes, would be those of time of possession, not of articles possessed.

It would seem that the indictment was sufficient; but a majority of the Court think otherwise.

The Court permitted experts to testify to the false character of the bills, without requiring proof that there was a bank in existence issuing genuine bills of which those in question might be counterfeits. In this there was no error. *Crawford* v. *The State*, 2 Ind. R. 132.—*McCartney* v. *The State*, 3 *id*. 353.—Whart. Pr., 2d ed., 335.

Objections to the giving and refusing of instructions are made; but, after carefully examining this branch of the case, we cannot say that error appears. See *Wilkinson* v. *The State*, 10 Ind. R. 372.

There was an application for a continuance, which was denied. The affidavit alleged that the defendant could prove by an absent witness, then residing in *Cincinnati*, *Ohio*, that he received the bills from said witness, without knowing they were counterfeit. The affidavit does not state when, nor where, nor under what circumstances the reception took place. For aught the affidavit shows, the affiant may have learned long before he was indicted that the bills were counterfeit, and have concluded to put them in circulation. We think the affidavit too indefinite, especially as the witness resided out of the jurisdiction of the

Court, and there was no proposition to take his deposition. See 2 R. S. p. 373.

The affidavit also named another person whose testimony was wanted to prove good character; but it did not state that the same fact could not be proved by other witnesses.

*Per Curiam.*—The judgment is reversed. Cause remanded, and the clerk ordered to notify the keeper of the state prison to return the prisoner to *Delaware* county jail.

*W. March, A. Steele, H. D. Thompson,* and *J. H. Bailey,* for the appellant (1).

(1) Counsel for the appellant cited the following authorities:

Touching the transcript, *Doty* v. *The State,* 7 Blackf. 427.

The continuance should have been granted. 1 Blackf. 50.—2 Ind. R. 135. —8 Blackf. 281.—5 Ind. R. 533.—6 *id.* 407.

The indictment does not sufficiently aver the name of the defendant, nor that it is unknown. 5 Blackf. 230.—*Id.* 280.—4 Ind. R. 632.—7 *id.* 659.

A copy, *in hæc verba,* of each of the one hundred bills should have been set forth. 5 Blackf. 458.—Whart. Am. Cr. Law, 2d ed., 122.

They also cited numerous authorities against the rulings upon instructions, which, as the rulings are not stated in the opinion, are not given here.