*A. J. Boone*, for appellant.

---

## WALL *v.* THE STATE.

INDICTMENT.—No indictment shall be quashed for any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and the person charged, or when the offense is charged with such a degree of certainty that the court may pronounce judgment on a conviction according to the right of the case.

Wall *v.* The State.

CRIMES—DEFINITION OF.—The act of *May* 31, 1852, (1 G. & H. 416,) providing "that crimes and misdemeanors shall be defined, and the punishment therefor fixed, by the statutes of this state," so far as it is in conflict with the act of *June* 10, 1852, (2 G. & H. 434,) defining felonies and prescribing punishment therefor, is repealed by the latter act.

INDICTMENT.—Where an indictment charges an assault with intent to commit murder in the first degree, under the statute, (2 G. & H. 406,) the defendant may be found guilty of an assault with intent to commit murder in the second degree.

INDICTMENT—RETURN OF.—Where it appears from the transcript that a grand jury was sworn and impanneled, of which *Israel Miller* was appointed foreman, that afterward the same grand jury returned into court several bills signed by their foreman as "true bills," and when the statement of the clerk shows that the indictment which follows is one of these, and then the indictment is set forth indorsed "a true bill. *Israel Miller*, foreman."

*Held*, that it sufficiently appeared from the record that this indictment was returned into court by the grand jury. *Adams* v. *The State*, 11 Ind. 304; and *Springer* v. *The State*, 19 Ind. 180, overruled.

APPEAL from the *Bartholomew* Circuit Court.

FRAZER, J.—Indictment charging that "on, etc., at etc., the defendant did unlawfully and feloniously make and perpetrate *and* assault, upon the body of one *M. L. T. by*, with the intention then and there, him, the said *M. L. T.*, feloniously, purposely, and of his premeditated malice to kill and murder, by then and there firing and shooting at him, the said *M. L. T.*, a pistol loaded and charged with powder and leaden balls," etc.

It is urged against the indictment that it does not charge the assault to have been made purposely, maliciously, or with premeditation, and that it does not sufficiently state the facts which constituted the assault.

It is not to be denied that this pleading is awkward in some of its language, the result evidently of a *lapsus*. Indisposed as we are to give encouragement to any want of proper care in such matters, we are, however, not at liberty to disregard the rules which the statute has enacted for our guidance. No indictment shall be quashed "for any surplusage or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged."

2 G. & H. 404. The words "make and perpetrate and," in this indictment, may be stricken out without changing the sense. They are surplusage. Again it is enacted that the indictment is sufficient if "the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon a conviction, according to the right of the case." 2 G. & H. 403.

To the objection that the assault ought to have been alleged to have been made *purposely*, etc., it is a sufficient answer that the language of the statute is followed; that it is substantially so charged; and that this question has been heretofore settled by this court correctly, as we think. *Cronkhite* v. *The State*, 11 Ind. 307.

The statute, upon which the indictment was founded, was approved, *June* 10, 1852, and enacts that "every person who shall perpetrate an assault, or an assault and battery, with intent to commit a felony, shall, upon conviction," etc. 2 G. & H. 438. Another statute approved, *May* 31, 1852, enacts that "crimes and misdemeanors shall be defined; and punishment therefor fixed by statutes of this state and not otherwise." 1 G. & H. 416.

It is insisted, by the appellant's counsel, that the first statute cited does not define the offense as required by the second, and that therefore there can be no prosecution maintained. The cases of *Hackney* v. *The State*, 8 Ind. 494; *Jennings* v. *The State*, 16 Ind. 335; *The State* v. *Huey*, *Id.* 338; and *Marvin* v. *The State*, 19 Ind. 181, are relied on to sustain this proposition.

In *Hackney* v. *The State*, which was a prosecution for a nuisance, the court decided that the offense *was* defined by statute, but the learned judge who delivered the opinion took occasion to indulge in some general observations concerning nuisances, and the history of our legislation upon that subject, in the course of which a *dictum* occurs, which might be deemed to support the views maintained by the appellant here. *Jennings* v. *The State* was decided upon this authority, and *The State* v.

*Huey* went off solely on the authority of *Jennings* v. *The State*, and *Marvin* v. *The State* on the authority of the previous cases.

Upon careful consideration, we are of opinion that these cases are not good law, as applicable to the question now in hand. That the legislature can not in such a matter impose limits or restrictions upon its own future action, and that, when two statutes are inconsistent, the last enactment stands as the law, are very plain propositions, which, we presume, will never be controverted. It follows that the act of *May* 31st, if in conflict with the act of *June* 10th, is so far repealed by the latter act. To hold that the legislature may, by the mere exercise of legislative power, say what a future legislature may or may not do, would be but to declare that the whole legislative power of the government may be lawfully annihilated, and the government summarily brought to an end, by the action of one of its departments.

There was a verdict of guilty of assault, with intent to commit murder in the second degree; motions for a new trial, and in arrest of judgment, and to discharge the defendant, were severally made and overruled, and judgment rendered.

The verdict was authorized under the indictment. Murder in the first degree includes murder in the second degree; it being identically the same thing, with the element of premeditation superadded. There is no room for any objection to the verdict in view of the statute, which declares that "the defendant may be found guilty of any offense which is necessarily included in that with which he is charged in the indictment." 2 G. & H. 406.

The transcript before us contains extracts from the order book, showing a grand jury sworn and impannelled, of which *Israel Miller* was appointed foreman, that afterward the same grand jury returned into court sundry bills, signed by their foreman "as true bills." Then comes a statement by the clerk that the indictment which follows is one of

these; and then the indictment is set out, indorsed "a true bill. *Israel Miller*, foreman."

It is argued that the *record* does not show the return of this indictment into court by the grand jury, and hence that a motion by the defendant in arrest of judgment should have been sustained.

If this question were new in this court, we should dispose of it briefly; but having been twice determined by our predecessors, and a result reached to which we do not assent, it is thought to be more respectful, and possibly it may be, on all accounts, proper to elaborate the question more fully.

That the court below, having its attention called to the matter by the motion in arrest, would have proceeded to render judgment, if in truth the indictment had never been properly returned by the grand jury, it is extremely unreasonable to believe. That court had the most ample means at hand to enable it to determine the actual facts without the possibility of making a mistake.

The clerk, the only legal custodian of the indictments, and the only person, save the judge and prosecuting attorney, who has access to them until after the arrest, produced this as a genuine indictment. It was subject to examination by the judge. Indictments returned are required to be recorded by the clerk during the term at which they are returned, and this record, after the judge shall have ascertained its accuracy, he must certify as correct. 2 G. & H. 405. It is then evidence of the finding and contents of the indictments. 2 G. & H. 428–429. And in case of the loss of an original, a copy from this record takes its place, and the trial goes. on. *Id.* 405. The court below could refer to this record, and thus no such thing as imposition or error, as to the fact, was possible.

Now, if the Circuit Court ought to have arrested the judgment, merely because its order book omitted to identify the indictment, by stating that it was marked "A,"

or "No. 1," and if we are to reverse the case on this point, it can only be because such sublimated technicality is required by established law. It would be in vain to attempt to support such a ruling upon any other ground, and whatever may be the law in other states, it seems clear that our statute prevents this court from interfering on that ground; for it is expressly enacted that we "must give judgment without regard to technical errors or defects, or to exceptions which can not affect the substantial rights of the parties." 2 G. & H. 427.

Nor are we sure that, even under the old practice, this objection would have been well taken. In *England*, the whole of the prefatory matter which goes before the indictment in the record, was always the mere ministerial work of the clerk, and did not usually appear on the rolls of the assizes to which the indictment was returned. It was called the *caption*, and sometimes the *schedule*, and was inserted by the clerk whenever the cause was removed by *certiorari* or writ of error. And yet it was deemed a part of the record, and if it did not show that the indictment was returned into court by the grand jury, the indictment might be quashed, or advantage could be taken of it by motion in arrest, or on error. But, like all mere ministerial acts, it was at any time amendable. 1 Chit. Crim. Law. 326–337, 442–443, 661–663.

When, under our practice, the venue is changed, it has been held by this court that the jurisdiction of the court trying the cause must be shown by a statement, like a caption, that the original indictment was filed in the court which tried the cause. *Doty* v. *The State*, 7 Blackf. 428. And as this is usually done in vacation, it would not appear otherwise than by the clerk's statement; and this court has not hesitated to hold that such statement is sufficient. *Jones* v. *The State*, 11 Ind. 357.

Indeed, it is an immemorial usage in this state to depend upon the statement of the clerk for many things in

a transcript, such as the identity of papers, the chronological order of the proceedings, and like matters, which give the transcript approved form as a connected history of the cause, from its inception until its end. We have no fault to find with this usage, and shall not be inclined to disturb it without substantial cause. Doing business under a code of procedure, the prime object of which was to expunge from the body of our law a multitude of technical excrescences, which had come to impair its excellencies, it will be intolerable if we listen to objections which, if sustained, will, without subserving the purposes of Justice, only entangle her again in the net from which she has sought to escape.

In some of our states, it is the practice to embody this *caption* in the indictment itself as a preface. But it has been held in *Massachusetts*, where this practice obtains, that the clerk's minute on the indictment of the date of filing may be looked to, to correct a repugnant statement in the caption, as where the caption shows the indictment returned on the *first* day of the term, and yet a crime is charged to have been committed on a subsequent day. *Commonwealth* v. *Stone*, 3 Gray, 453. In that case the judgment of conviction was affirmed on that ground, though it did not affirmatively appear to the appellate court that the indictment was returned after the commission of the offense.

In *The State* v. *Gilbert*, 13 Verm. Rep. 647, it was held that, though the *caption* be entirely omitted, yet the clerk's minute on the bill, and the general records of the term, will supply the defect.

And it has been also so held in *Pennsylvania* and *New Jersey*. State v. *Jones*, 4 Halst. 357; *Pennsylvania* v. *Bell*, Addison, (Penn.) 178.

This court, in *The State* v. *Pearce*, 14 Ind. 426, declared that the court below ought, by a *nunc pro tunc* entry, to have supplied the defect on its own motion, and that this

court would, by its own motion, direct a *certiorari* to bring up such an entry to affirm a judgment.

Without going to the full extent of the *Massachusetts* case, we would hardly hesitate to say that, even excluding the clerk's statement of the identity of the indictment, enough appears in the transcript before us to show *prima facie*, that this indictment was returned into court by the grand jury. Our conclusion differs from the opinion of this court in *Springer* v. *The State*, 19 Ind. 180, and *Adams* v. *The State*, 11 Ind. 304; but for the reasons already given, we do not regard those cases as resting on any solid foundation.

The judgment is affirmed with costs.

*Francis T. Hord,* for appellant.

*Oscar B. Hord,* Attorney General, for the State.