Beavers *v.* The State.

---

BEAVERS *v.* THE STATE.

CRIMINAL LAW.—*Bill of Exceptions Can Not be Attacked Collaterally.—Supreme Court.*—A bill of exceptions in a cause appealed to the Supreme Court, signed by the judge who presided at the trial, imports absolute verity, and can not be attacked in the Supreme Court, by affidavit.

SAME.—*Judge may Correct Bill of Exceptions.*—The judge may correct a bill of exceptions, even where it is prepared and agreed to by the attorneys of both parties to the appeal.

SAME.—*Grand Jury.—Empanelling of.*—The record of a criminal prosecution showed that "the regular grand jury for said term of said court," having been duly empanelled and sworn, "returned into open court, and upon their oaths presented," the indictment in question. *Held*, that the indictment was properly presented by a legal grand jury.

SAME.—*Murder.—Indictment.—"Unlawful" Killing.*—It is not necessary, under the statute of this State, in an indictment for murder, to aver that the killing was "unlawful."

SAME.—*Continuance.—Affidavit.—Absent Witness.*—An affidavit for a continuance on account of the absence of a witness, for whom a subpœna is therein alleged to have been issued to the sheriff of a certain county, must show in what county such witness resides, and that the absence of the witness has not been "procured by the act or connivance of the party, nor by others at his request, nor with his knowledge and consent."

SAME.—*Impeaching Witness.*—A continuance ought not to be granted on account of the absence of a witness for the defendant, by whom he can prove, that, more than a year previous to the trial, ill-will had existed between the defendant and a certain witness for the State.

SAME.—*Alibi.*—An affidavit for a continuance on account of the absence of a witness, by whom the defendant alleges he can prove an alibi, must clearly show that the alibi proposed will cover the whole of the time when the crime is alleged to have been committed.

Beavers v. The State.

SAME.—An affidavit by the defendant for a continuance, on the grounds, that he is not then prepared to submit his defence, that the people of the county are biased and prejudiced against him, and that, at the next term of the court, he can produce the guilty party, and acquit himself, but not stating the grounds of his defence, nor the name of the guilty party, is insufficient.

SAME.—*Evidence.*—As to the admission in evidence of a photograph of the deceased, etc., see paragraph " 5 " of the opinion.

SAME.—*Instruction to Jury.*—*Failure of Defendant to Testify.*—An oral instruction by the court to the jury, made at the request of the defendant, that the failure of the defendant to testify as a witness in his own behalf must not be "referred to, or in any manner considered by the jury," is one of which the defendant can not complain.

SAME.—*Assumption of Fact.*—On the trial of a defendant indicted for the alleged murder of a person whose dead body was found at a certain place, the court instructed the jury, that the questions for their determination were, whether the deceased had been killed at such place, and whether such killing was murder or manslaughter, and that, if the deceased "was not so killed," they must find the defendant not guilty. *Held*, that the instruction is correct.

SAME.— *Venue.*—Where, in such case, the evidence shows that the defendant, in company with the deceased, on the evening of the alleged murder, left one county, going toward an adjoining county, where the body of the deceased was found, the venue of the murder, if any was committed, is sufficiently shown to have been in the latter.

SAME.—*Evidence.*—*Manner of Death.*—Where, in such case, death is alleged in the indictment to have been caused by blows inflicted with several different instruments, proof that death was caused by a blow inflicted with any one of them is sufficient.

SAME.—*Circumstantial Evidence.*—Where, in such case, the evidence is merely circumstantial, if there be no hypothesis by which, in the order of natural causes and effects, the circumstances proved can be explained consistently with the innocence of the defendant, the evidence is sufficient to justify his conviction.

From the Jefferson Circuit Court.

*E. R. Wilson* and *J. Roberts,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

BIDDLE, C. J.—The appellant was indicted for the murder of John W. Sewell, tried by a jury, found guilty as charged, and is now under sentence of death. He appeals to this court.

1. Without noticing the proceedings in detail, we will

examine the questions raised against them on behalf of the prisoner, by his counsel. They first move this court to strike out of the bill of exceptions an instruction given to the jury, by the court, numbered " 21 "; and, also, to strike out a certain " statement written in the bill of exceptions by the judge, after it was prepared by counsel and handed to him for his signature, and so inserted by him without their knowledge, or opportunity to object before he signed it." This motion is founded upon a joint affidavit, made by Vincent Kirk, George W. Smith and Joseph P. Wells, stating, amongst other matters, " that the part of said bill of exceptions numbered ' 21,' and also signed by said judge, was not written at or during the trial of said cause ; nor was the same read to the jury ; " and further stating, that a certain other part of the bill of exceptions " was also written by said judge, and placed in said bill of exceptions, after the same was presented to him, as aforesaid, for his signature, and that the defendant, nor his attorneys, had any knowledge that the same was in said bill of exceptions," etc.

There is a proper mode of correcting a bill of exceptions, but it is not by attacking it collaterally, in this court, by affidavits. We know of no practice that will warrant such a proceeding. A court is not bound to sign a bill of exceptions as the attorneys prepare it, even though they agree to it; nor is it improper for the judge to correct a bill of exceptions, without the consent of the attorneys.

We must hold the bill of exceptions, signed by the judge, as importing the truth, instead of the affidavit which attacks it. The motion is overruled.

2. It is insisted, that " The record does not show that there was a grand jury empanelled, or that the indictment was found, or returned into court, by any legally authorized grand jury."

The record, as to this point, is as follows : " Be it remembered, that heretofore, to wit, on the 22d day of November, 1877, the same being the third juridical day of the November term, 1877, of said court, the regular grand jury for

said term of said court, having been duly empanelled and sworn, according to law, returned into open court, and upon their oaths presented, the following indictment, to wit:"

Here follows the indictment upon which the prisoner was tried.

This sufficiently shows the proper presentment of the indictment, and that it was found by a legal grand jury. *Bowe* v. *The State*, 25 Ind. 415; *Wall* v. *The State*, 23 Ind. 150; *Bailey* v. *The State*, 39 Ind. 438.

3. There was no motion made to quash the indictment, but the question of its sufficiency is raised in the record, by a motion in arrest of judgment, and an assignment of error in this court. The objection taken to the indictment is, that it contains no averment that the killing was "unlawful;" but it is alleged, that the prisoner "did feloniously, purposely, and with premeditated malice, kill and murder John W. Sewell," etc. This is sufficient. Neither the word "unlawful" nor "unlawfully" is used in our statutory definition of murder; nor need either of them be used in an indictment for murder. Besides, the word "feloniously" includes all the meaning that can be expressed by the word "unlawfully." The authorities support this rule. *Jerry* v. *The State*, 1 Blackf. 395.

4. The prisoner moved the court for a continuance of his cause. The motion was founded upon two affidavits, made by himself. The first affidavit states, that "Ida M. Beavers is a material and competent witness on his behalf, on the trial herein; that he has had a subpœna issued for said witness, directed to the sheriff of Marion county, this State; that said subpœna has not yet been returned, and said witness is not now in attendance; that he expects to prove by said witness, that, within the last past year and a half, George M. Hammell, a witness on the part of the prosecution, had serious difficulty with her, growing out of an attempt on the part of said Hammell to have illicit intercourse with her, and she communicated the fact to affiant (her brother),

and that affiant and said Hammell had, in consequence thereof, words of anger and trouble, and that there has ever since existed, between said Hammell and defendant, an ill-will." The same affidavit further states, " that one William D. Patterson, a resident of said county, is a material and competent witness for him, on the trial herein; that he has had a subpœna to issue for said witness; that he expects to prove by said witness, that said witness and defendant were together on the night of the alleged murder, and were not in the vicinity of the place alleged as the place of the murder; that the subpœna is returned, 'not found,' as to said Patterson; that said evidence is true, and he cannot prove the same by any other witness whose testimony can be now procured; that the absence of said witness has not been procured by any act or connivance of this defendant, or with the knowledge or consent of' this defendant; and, if this cause is continued until the ensuing term of this court, he believes he can procure the attendance of both of said witnesses," etc.

This affidavit is defective in several respects. It does not state where the witness Ida M. Beavers resides. A subpœna, issued to Marion county, if the witness did not reside therein, of course would be fruitless; besides, the evidence sought to be obtained by her is remote and collateral. It cannot be fairly supposed that a difficulty between the witness and defendant, had a year and a half before, could have much, if any, continuing effect at the time of the trial. The evidence sought to be obtained from the witness Patterson is loosely stated. He might have been with the prisoner " on the night of the alleged murder" a very short time, and yet have allowed abundance of time to the prisoner to commit the deed charged against him. They might have been " not in the vicinity of the place alleged as the place of the murder," and yet not so remote as to tend to show that the prisoner could not have committed the crime on that night. It does not sufficiently show that the absence of the witness was not "procured." The statutory requisites of an

affidavit for continuance on this point are, that the absence of the witness "has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge and consent." 2 R. S. 1876, p. 164, sec. 322. The words, "nor by others at his request," in reference to the witness Patterson, are absent from this affidavit.

The second affidavit states, that the defendant is not prepared to go to trial; that his imprisonment has prevented him from making his defence as he could otherwise have done; that the public mind, and the people throughout the county, are excited, biased and prejudiced against him; that the press of the city has been engaged in publishing articles relative to affiant, which have been and are being read by the citizens generally, greatly tending to affect the minds of the citizens against him; that, by the next term of the court, "he can and will be fully able to bring before the court the person actually guilty of this grave crime now charged against him, and be able fully to acquit himself." But who it is that has committed the crime, how he can acquit himself, what his defence, if any, is, he does not state. Perhaps a successful motion for a change of venue might have been founded upon this affidavit, but it is insufficient to obtain a continuance of the case. *Dickey* v. *Morgan,* 8 Blackf. 533; *Fleming* v. *The State,* 11 Ind. 234; *Jones* v. *The State,* 11 Ind. 357; *Ward* v. *Colyhan,* 30 Ind. 395.

5. The court allowed a certain photograph, and evidence touching it, to go to the jury, for the purpose of identifying the deceased; evidence touching a spot on the coat of the prisoner, supposed to be a blood spot, and the test of the physician in reference to the same spot; evidence as to the dodging, trembling and confusion of the prisoner, when met by the witnesses, before and at the time of his arrest; evidence of a witness as to his having seen a man in Ripley county, some time before the commission of the homicide, who resembled the prisoner, evidence touching a satchel and its contents, found near the church where the dead body was found, as belonging to the deceased; the admission of

all of which the prisoner's counsel think was erroneous; but, with careful attention, we can see no error in these rulings.

6.   It is also claimed that the court did not properly instruct the jury, as to the fact that the prisoner did not testify in his own behalf.   We find the following instruction in the bill of exceptions:  "And the court then and there, at the request of the defendant's attorneys, charged the jury orally, that the defendant's failure to testify must not be referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury, in determining the case."   We are of the opinion, that this instruction is correct, and a sufficient discharge of the court's duty upon that point.

7.   The counsel for the prisoner complain of the instructions given to the jury, by the court, generally, but point out no specific objection to any of them, except to the 13th, in which, they say, " The court assumes that John W. Sewell was the person found dead."   We do not so understand the instruction.   The part complained of is in the following words:   " The first question for you to consider is, was John W. Sewell killed at or near Liberty church, in Jefferson county, Indiana, on the 3d or 4th of November, 1877 ? and, if so, was the killing murder or manslaughter?   If you find he was not so killed, you will find the defendant not guilty."   The instruction does not assume that John W. Sewell was the person found dead, but assumes, as the indictment charges, that it must have been John W. Sewell that was killed, or the defendant should be found not guilty.   This is right.   The prisoner has nothing to complain of in this instruction.

8.   As to the evidence:   It is claimed that the venue was not sufficiently proved.   We think it was.   The prisoner and the deceased left Scott county, on the evening of the 3d of November, 1877, by railway, going towards Jefferson county; on the next day the prisoner was in Jefferson county; and the body of the deceased was found in Jefferson county.

The clear conclusion is, that the murder, if committed at all, was committed in Jefferson county.

9. The indictment alleges, that the killing was done by "kicking and stamping the said John W. Sewell with his feet, and striking, beating, bruising, pounding, and mortally wounding said John W. Sewell with his fists and with certain stones, clubs, sticks, bricks, billets of woods, bars of iron, sling-shot, and other missiles and weapons, to the grand jurors unknown," etc. The counsel for the prisoner contend, that "It is just as much a part of the allegation that the death was in part produced with weapons to the grand jury unknown, as that he was killed at all; and it was necessary to prove this allegation." The evidence shows that the dead body was found in a church, with the head bruised and broken, and fatally injured; and a stone, suitable to accomplish the deed, was found with the body. The jury would have no trouble in fairly concluding that the killing was done by some of the means charged in the indictment. We are constrained to say, that there is nothing in this point.

The counsel do not discuss the question of the sufficiency of the evidence, generally, to establish the guilt of the prisoner; and we think they very properly waived it. It is all circumstantial. No witness saw the killing done, but the evidence is very convincing. We can conceive of no hypothesis, by which, in the order of natural causes and effects, the facts proved can be explained consistently with the innocence of the prisoner; and this is the true test of circumstantial evidence. It excludes all reasonable doubt of the prisoner's guilt.

It appears to us that the prisoner has been tried properly, according to law, and found guilty upon sufficient evidence, and we know of no judicial reason why he should not suffer the penalty of his crime.

The judgment is affirmed.