## RINKARD v. THE STATE.

[No. 19,699. Filed December 11, 1901.]

CRIMINAL LAW.—*Indictment.— Grand Jury.*—Where an indictment, regular upon its face, is returned into open court without objection, it will, in the absence of anything to the contrary upon the record, be presumed that the grand jury returning it was duly impaneled, charged and sworn. *pp. 537-539.*

SAME.—*Indictment.—Grand Jury.—Appeal and Error.*—Objections to the organization of the grand jury, or to the regularity of the procedings of the court in receiving an indictment, must be presented to the trial court by motion or plea in abatement, otherwise

they will be deemed waived, and the fact that a defendant's defense was unsoundness of mind does not change the rule as to such waiver.  *pp. 539, 540.*

APPEAL AND ERROR.—*Criminal Law.*—Where a defendant in a criminal cause appeals to the Supreme Court from a judgment of conviction, he must show affirmatively by the record that there was error in the proceedings of the court, and that such error was prejudicial to his substantial rights.  *p. 540.*

NEW TRIAL.—*Newly Discovered Evidence.—Criminal Law.*—No error was committed in denying a motion for a new trial, on the ground of newly discovered evidence, in a prosecution for murder in which unsoundness of mind was one of the defenses, where the evidence relied upon was as to unsoundness of mind of defendant and was cumulative.  *pp. 540, 541.*

CRIMINAL LAW.—*Evidence.— Weight.— Appeal and Error.*— Where, in a prosecution for murder, defendant interposed the plea of insanity, the finding of the jury that defendant was of sound mind at the time the offense was committed will not be disturbed on appeal on the evidence, on the ground that the testimony for the defendant on the issue of insanity was of an affirmative character, and that on behalf of the State was negative, and that for this reason the former only should be considered.  *pp. 541-544.*

From Wabash Circuit Court; *H. B. Shively,* Judge.

John Rinkard was convicted of murder in the first degree, and appeals.  *Affirmed.*

*G. W. Peterson, O. G. Allen, R. S. Peterson* and *J. A. Kersey,* for appellant.

*W. L. Taylor,* Attorney-General, *J. W. Murphy* and *W. M. Amsden,* for State.

DOWLING, J.—Indictment in the Grant Circuit Court for murder in the first degree. Plea of not guilty. On the application of the appellant the venue of the cause was changed to Wabash county. Additional plea of unsoundness of mind at the time the offense was committed. Reply in denial of plea of insanity. Trial by jury. Verdict of guilty, and that the appellant suffer death by hanging.

A reversal of the judgment is sought upon four grounds, which are alleged as follows:  (1) It is not shown that the grand jury which indicted the appellant were impaneled

and sworn; (2) it is not shown that the indictment was returned by any grand jury into open court; (3) it is not shown that the Wabash Circuit Court had jurisdiction of the cause; (4) error of the court in overruling the motion for a new trial. The indictment was returned September 8, 1900. On the same day the appellant appeared to the indictment in person, and by his attorneys, and, being arraigned, pleaded not guilty. September 12, 1900, appellant, upon affidavit, asked for a change of venue because of excitement and prejudice against him in Grant county. The motion was sustained, and the cause was sent to the Wabash Circuit Court, in Wabash county. February 5, 1901, appellant filed his special plea alleging that he was of unsound mind at the time the offense was committed, and the State filed its reply thereto. The trial began February 11, 1901, and on February 19, 1901, the jury brought in their verdict.

The record entry of the return of the indictment as corrected upon *certiorari* is as follows: "Grant Circuit Court. Sixth day of September term, 1900. No. ——. Comes now the grand jury for the term aforesaid, and present in open court the following indictment, to wit: In the Grant Circuit Court, September 8, 1900. The State of Indiana v. John Rinkard. Indictment for murder in the first degree. The grand jury of the county of Grant, in the State of Indiana, upon their oath, do present that John Rinkard, on * * * at * * *."

The record of the Wabash Circuit Court, to which the cause was sent, contains the following entries: "Be it remembered that on the 15th day of October the sheriff of Grant county filed in the office of the clerk of Wabash county the original indictment in the case of The State of Indiana v. John Rinkard, number 1595, which indictment is as follows: [Here follows indictment.] And be it further remembered that on said date said sheriff of said Grant county also filed in the office of the said clerk of Wabash

county the transcript of the proceedings had in said Grant county in said cause, which transcript is in the words and figures following: [Here follows transcript.]"

It will be seen that the objections that the record did not show the return of the indictment by the grand jury of Grant county into the Grant Circuit Court, and that no legal transfer of the cause from the Grant Circuit Court to the Wabash Circuit Court appeared in the record, have been obviated by a correction of the transcript.

It is earnestly contended by counsel for appellant that the record is still essentially defective in its omission of the names of the persons composing the grand jury, and of the recital that they were duly impaneled and sworn. It is true that in some of its earlier decisions this court held that the record must affirmatively show that the grand jury was impaneled at the term the indictment was found. *Sawyer* v. *State,* 17 Ind. 435; *Conner* v. *State,* 18 Ind. 428; *Jackson* v. *State,* 21 Ind. 171; *Hall* v. *State,* 21 Ind. 268. But these cases were expressly overruled on this point by *Alley* v. *State,* 32 Ind. 476. There the court say: "The cases mentioned above [*Sawyer* v. *State,* 17 Ind. 435; *Conner* v. *State,* 18 Ind. 428; *Jackson* v. *State,* 21 Ind. 171; *Hall* v. *State,* 21 Ind. 268] refer to no authority whatever in support of the proposition which they announce. Nor is the reason given, viz., that a charge by authority does not otherwise appear against the accused, very satisfactory. It has an easy answer, in this, that the court below may be supposed to know its own grand jury, and that when its record declares that the grand jury returned into court as a true bill the indictment in a given case, it leaves no room for the inference that possibly the indictment was *not* found by a grand jury. It is out of our power to conceive of any reason requiring the record of each criminal case to show, at length, the impaneling of the grand jury, which would not equally require that it show the commission and oath of the prosecuting attorney who is required to sign the indictment.

If there be a rule of the law requiring it, it must be so adjudged merely because the law requires it, and not because there is any good reason for it. We have searched the books in vain for authority or *dicta* requiring it, or practice sanctioning it, and we think it is wholly without support in the law; and it is certainly a requirement having no tendency to promote the correct administration of criminal justice. The caption to the indictment is the work of the ministerial officer, though in some of the American states it is customary to insert the facts which it should contain in the commencement of the indictment itself; and this is sufficient, but not necessary. It contains a short statement, setting forth with reasonable certainty the style of the court, and the time and place of its meeting, when and where the indictment was found; and, in England, it was usual to give the names of the grand jurors by whom it was found, and to aver that they were good and lawful men of the county, duly sworn and charged, and that they presented the indictment. But it is not necessary that it should contain the names of the grand jurors (*Rex* v. *Aylett*, 6 Ad. & Ell. 247), though in Lord Hale's time it was thought otherwise. 2 Hale 167. The whole subject is fully discussed by Mr. Wharton, and numerous English and American cases are referred to in the notes. 1 Am. Crim. Law (5th ed.), §§219-232. See *Wall* v. *State*, 23 Ind. 150; Wharton's Precedents, 2. Now, all these necessary facts are contained in the record before us, either in the caption or in the indictment itself. The law requires nothing more, and we are therefore constrained to overrule the cases alluded to, and which are in conflict with this opinion."

Again, it is said in *Holloway* v. *State*, 53 Ind. 554, 556: "True, it is said by appellant's counsel, that 'the record fails to show that the grand jury was impaneled, sworn and charged, and consequently that the court had no jurisdiction to put the defendant upon trial'; and again, that 'the court erred in overruling the motion in arrest of judgment

for the same reason.' * * * If it be true that the record fails to show that the grand jury was impaneled, sworn and charged, it is equally true that the record does not show that the grand jury was *not* impaneled, sworn and charged. In this case, we will presume, the contrary not appearing, that the grand jury was legally impaneled, sworn and charged. *Bell* v. *State,* 42 Ind. 335, and *Long* v. *State,* 46 Ind. 582."

On appeal in criminal causes, as in civil, all reasonable presumptions are made in favor of the regularity of the proceedings of the court, and where there is nothing in the record showing them to be invalid, they will generally be held valid. This principle has been applied in numerous cases. *Wall* v. *State,* 23 Ind. 150; *Kessler* v. *State,* 50 Ind. 229; *Beavers* v. *State,* 58 Ind. 530, 532; *Clare* v. *State,* 68 Ind. 17; *Powers* v. *State,* 87 Ind. 144, 146; *Walter* v. *State,* 105 Ind. 589; *O'Brien* v. *State,* 125 Ind. 38, 9 L. R. A. 323.

While some courts have maintained a different and more technical rule, the weight of modern authority, as well as sound reason, seems to sustain the proposition that where an indictment, regular upon its face, is returned into open court, and is received and acted upon by the court without objection, it will, in the absence of anything to the contrary upon the record, be presumed that the grand jury returning it was duly impaneled, charged, and sworn.

If any objections to the organization of the grand jury, or to the regularity of the proceedings of the court in receiving the indictment existed, such objections should have been presented to the trial court by motion or plea in abatement. *Agnew* v. *United States,* 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; *Cooper* v. *State,* 120 Ind. 377; *Deitz* v. *State,* 123 Ind. 85. Otherwise, they must be deemed waived. The circumstance that unsoundness of mind was one of the defenses in this cause does not alter the rule as to such waiver, or relieve the appellant from its consequences.

On appeal to this court, the appellant must show affirmatively by the record that there was error in the proceedings of the court, and that such error was prejudicial to his substantial rights. The rule in such cases is very clearly stated in *State, ex rel.,* v. *Jamison,* 142 Ind. 679, 684: "Again, when the defendant in a criminal cause appeals from a judgment of conviction to this court, the State is relieved of the burden of the contest. In the trial court, it has the laboring oar, and the *onus* is cast upon it to convict the accused according to law, and to establish his guilt by the evidence beyond a reasonable doubt. But upon an appeal by the defendant to this court, which is merely one of error, the *status* of the parties is changed. The case comes here with all the presumptions in favor of the judgment of the lower court. We do not weigh the evidence, nor reverse upon the question of preponderance. The burden under the rule by which the appeal is controlled, is cast upon the appellant, and he is required to affirmatively show by the record the error of which he complains, and that the same was prejudicial to his substantial rights."

These rulings dispose of all questions raised by the appellant except the last: Did the court err in overruling the motion for a new trial? The points urged against the decision of the trial court upon this motion are (1) that a new trial should have been granted because of the discovery of new evidence, and (2) because the verdict was contrary to law and to the evidence.

The evidence said to have been newly discovered was to the effect that a witness living in Marion, Grant county, at the time of the homicide, had been acquainted with the appellant some ten or more years before, and while the appellant was a resident of Lima, Ohio; that this witness knew the fact that the appellant had been known at Lima as "crazy John Rinkard", and that the witness himself from his observation and knowledge of the actions and behavior of the appellant is of the opinion that the appellant was,

when he knew him in Lima, a person of unsound mind. Proof of the fact that the appellant bore a nickname at Lima, Ohio, was inadmissible. The term applied to him may have originated from causes wholly different from unsoundness of mind. It may have resulted from some mere eccentricity of manner. It may have originated in a spirit of mischief or malice without anything in the appearance or conduct of the appellant to suggest or deserve it. The testimony of the witness concerning the actions and appearance of the appellant while at Lima, Ohio, must be regarded as cumulative, and of the same nature and to the same point as the testimony of numerous other witnesses introduced on behalf of appellant on the trial. Besides, it cannot be supposed that the introduction of this testimony would have materially influenced the verdict. Nor do we think sufficient diligence was shown in searching for evidence of this character to justify the court in setting aside the verdict, and beginning the investigation anew, for the purpose of letting in this testimony.

In the last place it is urged that the verdict is contrary to law and to the evidence. These supposed objections relate exclusively to the issue of insanity tendered by the appellant. As was said in *Keith* v. *State, ante,* 376, the circumstance that the appellant has beeen adjudged guilty of murder in the first degree, and sentenced to suffer the punishment of death, does not change the rule that on appeal this court cannot weigh the evidence. Neither can an exception to that rule be made because one of the issues in the case was the soundness or unsoundness of the mind of the appellant at the time the offense was committed. This, like every other question of fact, was peculiarly and exclusively a matter for the determination of the jury.

Counsel for appellant concede the rule as we have stated it, and assail the verdict upon the only ground available under such circumstances. They contend that there was evidence that the appellant was a person of unsound mind

Rinkard v. State.

when the offense was committed, and that there was no evidence to the contrary. This proposition is conclusively disproved by the record. At the time of the homicide the appellant was about sixty years old, and his wife was ten years younger. They had been married thirty-three years; five children had been born to them; they had lived at Marion, in Grant county, Indiana, ten years. The appellant had been, at all times, as disclosed by the proof, ill-tempered, coarse, profane, and brutal in his treatment of his wife and family. Not long after his marriage to the deceased he had kicked and beaten her. He showed no natural affection for his children, and, upon slight and insufficient pretexts, whipped them severely. His cruelty of disposition extended even to his horses. His unkind behavior toward his wife continued throughout their entire married life. From the time of appellant's marriage to the deceased, until the day when he killed her, the appellant had been engaged in business. He had resided in different places, and had managed his own affairs. He was industrious, close in his dealings, somewhat eccentric in manner and speech, and always disagreeable and overbearing, particularly to those in any degree dependent upon him. A short time previous to the homicide, the wife of the appellant went to Ohio to attend the funeral of her mother. When she came back to Marion, she did not return to the appellant, but took up her residence with her brother. Between 10 and 11 o'clock on the morning of June 9, 1900, the appellant went to the house where his wife was staying, and found her ironing in the kitchen near an open window. He fired through the window, shooting her through the hand. He rushed into the house and seized her. She struggled with him, and, with her head upon his breast, begged him not to kill her. He answered her with a curse, and shot her three times more, two bullets passing through her chest, and one of them penetrating her heart. She died instantly. The appellant then fired a bullet into his own head, inflict-

Rinkard v. State.

ing a serious wound, from which, however, he soon recovered. After the homicide, he was found resting partly upon a bed in the room where he had killed his wife, with two revolvers under him. All the chambers of one revolver were empty; two chambers of the other had been discharged.

The fact of the homicide by the appellant was not denied on the trial. The defense was insanity. Many witnesses, expert and non-expert, were examined on behalf of the appellant to sustain his plea of unsoundness of mind. Much of this testimony tended to prove that the appellant was insane. On the other hand, the State introduced a large number of witnesses, expert and non-expert, who testified to facts, and expressed opinions, proving, and strongly tending to prove, that the appellant was of sound mind. The argument of counsel for appellant that the testimony for the appellant was of an affirmative character; that the proof for the State was negative; and that, for this reason, the former only should be considered, is utterly unsound. The evidence for the State was competent and material, and was such as must always be produced by a party who denies the insanity of the person whose mental condition is the subject of inquiry. If the rule were as stated by counsel for appellant, it would be impossible in any case for the State to meet the proof of a defendant, alleged to have been insane, or to produce evidence of sanity. Other things being equal, testimony proving, or tending to prove, sanity is entitled to as much respect as testimony of the same kind proving, or tending to prove, insanity. There was, as we have said, evidence, and much of it, from which the jury were authorized to find that the appellant, at the time the offense was committed, was a person of sound mind. This being true, we can proceed no further. The question of the weight and value of the evidence, and the credibility of the witnesses, was exclusively for the jury. Upon that evidence, conflicting and irreconcilable perhaps, they decided against the appellant. The responsibility for a just and correct deci-

sion upon the evidence was with them; by their decision this court is bound; and upon a searching and thorough examination of the whole record, we are convinced that they were fully justified in their conclusions of the sanity of the appellant, and of his guilt of the crime charged against him in the indictment.

Judgment affirmed.