## STEWART *et al.* v. STATE.

No. A-235.    Opinion Filed June 8, 1910.

Rehearing Denied December 22, 1910.

(109 Pac. 243.)

1.  **CRIMINAL LAW—Crimes—What Constitutes.** It is the exclusive province of the Legislature to declare what shall constitute a crime, but it is the duty of the courts to determine whether a particular act done or omitted is within the intendment of a general statute.

2.  **CRIMINAL LAW—Crimes—Description.** The Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result.

3.  **BREACH OF THE PEACE—Disturbing the Peace—Validity of Statute.** Section 2782,, Snyder's Comp. Laws Okla., which provides that "every person who wilfully and wrongfully commits any act * * * which grossly disturbs the public peace or health, * * * although no punishment is expressly prescribed therefor by this code, is guilty of a misdemeanor," is not void for uncertainty; and whooping and yelling and uttering loud and vociferous language are acts prohibited thereby, if they grossly disturb the public peace.

4.  **CRIMINAL LAW—Crimes—Common-Law Definition.** There are no common-law crimes in this state; but, where the Legislature creates, without defining, an offense which was a crime under the common law, the common-law definition of the crime will be adopted.

5.  **NEW TRIAL—Bias of Juror.** Where a motion for a new trial in a criminal case alleged that one of the trial jurors was prejudiced against the defendant, and prior to the trial had stated that the defendant was guilty and should be convicted, which fact was unknown to the defendant or his counsel until after the trial, and which allegation is supported by the affidavit of the person to whom the juror is alleged to have made the statement, such allegation thus supported by affidavit tenders an issue which the prosecution should meet and the court should try out; and, if no counter showing is made by the state, the allegation will ordinarily be taken as true.

6.  **SAME—Guilt Admitted.** Where the accused testifies in his own behalf and admits his guilt under oath, a new trial should not be granted on account of the prejudice of a trial juror.

(Syllabus by the Court.)

*Appeal from Cleveland County Court; N. E. Sharp, Judge.*

Fred Stewart, Claude Stewart, Earl Stewart, Charlie Wilson, Frank Wilson, Charley Blanton, Jess Blanton, Ira Butler, and Walter Butler were convicted of grossly disturbing the public peace, and their punishment was assessed at a fine of $15 each. They filed a motion for a new trial, which was heard and overruled, and they appeal. Affirmed.

*Williams & Williams* and *S. A. Horton,* for plaintiffs in error.

*Chas. West,* Atty. Gen., *Chas. L. Moore,* Asst. Atty. Gen., and *George G. Graham,* Co. Atty., for the State.

RICHARDSON, JUDGE.    The information in this· case charged that the plaintiffs in error did "unlawfully, wilfully, and wrongfully commit divers acts of yelling, hollering, and uttering loud and vociferous language, thereby grossly disturbing the public peace of said community." The information was drawn under running section 2650, Wilson's Rev. & Ann. St. 1903 (section 2782, Snyder's Comp. Laws), which reads as follows:

"Every person who wilfully and wrongfully commits any act which  *  *  *  grossly disturbs the public peace or health, *  *  *  although no punishment is expressly prescribed therefor by this chapter is guilty of a misdemeanor."

We are met at the threshold of our consideration of this case by the contention that this statute is void for uncertainty; that the Legislature, and not the courts, must declare what acts are criminal; and that it cannot be left to the court or the jury trying the cause to determine ·what acts do or do not constitute an offense. In support of this contention it is urged that there are no common-law crimes in this state, for the reason that our statutes (Snyder's Comp. Laws, § 2019) provide that "no act or omission shall be deemed criminal or punishable except as prescribed or authorized by the statutes of this state," and that, therefore, the common law cannot be resorted to for the purpose of supplying the omissions or correcting the uncertainties of the act in question. Also, there is cited the case of *Jennings v. State,* 16 Ind. 335, where it is held that a statute declaring it an offense

for any person to be guilty of public indecency creates no crime, for the reason that the term "public indecency" is not defined by the act, and has no fixed legal definition. We are also referred to the case of *Hackney v. State*, 8 Ind. 494, where it is held that there are no common-law crimes in Indiana; that the courts cannot look to the common law for the definition of a crime created but not defined by the Legislature; and that an act prohibiting the maintenance of a common nuisance and prescribing a punishment therefor creates no crime, in that it fails to provide what shall constitute a public nuisance. We find, however, that those cases have been overruled by the Supreme Court of Indiana.

That it is the exclusive province of the Legislature to declare what shall constitute a crime, and that neither the court nor the jury have any such power, is undoubtedly true. But the statement of that fact alone furnishes no answer to the question raised. Ordinarily the Legislature speaks only in general terms, and for that reason it often becomes the duty of the court to construe and interpret a statute in a particular case for the purpose of arriving at the legislative intent, and of determining whether a particular act done or omitted falls within the intended inhibition or commandment of such statute. And the lawmaking power in this state has laid down for the courts in section 2027, Snyder's Comp. Laws Okla., a rule for the construction of criminal statutes, as follows:

"The rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

Section 2020, Snyder's Comp. Laws Okla., defines a crime or public offense in substance to be an act or omission forbidden by law to which a punishment is annexed upon conviction. Now, in creating an offense the Legislature, we apprehend, may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces or is reasonably calculated to produce a certain defined or described result. As one instance of the former, it is made an offense by our statutes for any

person to carry concealed on or about his person, saddle, or saddle bags any pistol, revolver, bowie knife, etc. That is a certain described act. The result of the act is immaterial, and the offense can be committed only by doing the certain act, namely, carrying one of the prohibited weapons concealed about the person, or about one's saddle or saddle bags. On the other hand, let us examine the law defining murder. Under our statutes (section 2268, Snyder's Comp. Laws Okla.) murder is the killing of one human being by another in the following cases:

"(1) When perpetrated without authority of law, and with 'a premeditated design to effect the death of the person killed or of any other human being. (2) When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. (3) When perpetrated without any design to effect death by a person engaged in the commission of any felony."

Here no particular act is defined or described. Any act, whatever it may be, done under the circumstances stated, and which produces a certain result, namely, the death of a human being, is denounced as murder. Under the first subdivision, it may be committed by shooting, stabbing, striking, hanging, burning, drowning, poisoning, or by any other act which is capable of producing the death of a human being. It may even be committed by a parent by wilfully starving his child, or by abandoning it so that it die. And the same is true of the second subdivision of the definition of the crime—any act done which is imminently dangerous to others and evinces a depraved mind, regardless of human life, and which results in death is murder, even though there be no actual intent to injure any one. Section 2272, Snyder's Comp. Laws. And the same may be said of the general definitions of manslaughter in both the first and second degree. The Legislature does not undertake to describe the act or acts by which any of the degrees of unlawful homicide may be committed. It makes unlawful any act committed under the circumstances stated, and which produces the death of a human being. This is true, also, of many other of

our statutes creating crimes and offenses. The statutes of many of the states defining murder and manslaughter, as well as many other crimes, are almost identical with ours; and yet we have never heard the validity of any of these statutes questioned. And, if they are valid, we can see no reason why the statute under which this prosecution was instituted and carried on is not good. If the statute in question is void for uncertainty because the Legislature failed to enumerate or describe the particular acts constituting it, then what can be said of the statutory definition of murder, and especially the second subdivision thereof, which says that homicide is murder "when perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual"? The statute under consideration says that "every person who wilfully and wrongfully commits any act which grossly disturbs the public peace is guilty of a misdemeanor." Is one any more uncertain than the other? In the former the act must be imminently dangerous to others and must evince a depraved mind, regardless of human life, and must result in the death of a human being. In the latter the act must be wilful and wrongful, and it must produce a certain result, namely, the gross disturbance of the public peace.

Now the expressions "public peace," "breach of the public peace," and "disturbance of the public peace" are legal terms, often defined and well understood. They had a fixed and definite meaning under the common law. *Neuendorff v. Duryea,* 6 Daly (N. Y.) 276; *State v. Benedict,* 11 Vt. 236, 34 Am. Dec. 688. In *Galvin v. State,* 6 Cold. (Tenn.) 294, it was said that "a breach of the peace is a violation of public order; the offense of disturbing the public peace. An act of public indecorum is also a breach of the peace." In *People v. Bartz,* 53 Mich. 493, 19 N. W. 161, it is said:

"The term 'breach of the peace' is generic, and includes riotous and unlawful assemblies, riots, affrays, forcible entry and detainer, the wanton discharge of fire arms so near the chamber of a sick person as to cause injury, the sending of challenges and

provoking to fight, going armed in public without lawful occasion in such manner as to alarm the public, and many other acts of a similar character."

And it was there held that the discharge of a firearm in a public place was a breach of the peace.

In *Davis v. Burgess*, 54 Mich 514, 20 N. W. 540, 52 Am. Rep. 828, it is said:

"Now what is understood by breach of the peace? By 'peace' as used in the law in this connection is meant the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is a breach of the peace. It is the offense of disturbing the public peace, or a violation of public order or public decorum. Actual violence is not an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens, but of public morals, without the commission of the offense. The good sense and morality of the law forbid such a construction."

This definition is discussed and approved in *State v. White*, 18 R. I. 473, 28 Atl. 968. In *Scougale v. Sweet*, 124 Mich 311, 82 N. W. 1061, the former definition given by the Supreme Court of Michigan was reviewed and approved, and it was there stated that "a breach of the peace is a violation of public order; the offense of disturbing the public peace. An act of public indecorum is also a breach of the peace"—citing Bouvier's Law Dictionary.

It is true that there are no common-law crimes in this state, but nevertheless, when the Legislature creates without defining an offense which was a crime under the common law, the common-law definition of the crime will be adopted. This is reasonable, and is sustained by plenty of authority. For instance, there are no common-law crimes against the United States and the United States courts can take cognizance only of offenses made punishable by some express provision of the Constitution, laws, or treaties of the United States. *United States v. Eaton,* 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; *Pettibone v. United States,* 148

U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419.   But it is uniformly
held in the United States courts that, when Congress creates a
common-law offense without defining it, the courts will look to
the common law for the definition of the crime.   *In re Greene*
(C. C.) 52 Fed. 104; *United States v. Cardish* (D. C.) 143 Fed.
640.   In *Pettibone v. United States, supra,* Chief Justice Fuller
said:

"The courts of the United States have no jurisdiction over
offenses not made punishable by the Constitution, laws, or treaties
of the United States, but they resort to the common law for the
definition of terms by which offenses are designated."

No statute of the United States defines murder.   Section 5339
of the Revised Statutes of the United States (U. S. Comp. St.
1901, p. 3627) merely provides that "every person who commits
murder" in any place under the exclusive jurisdiction of the United
States "shall suffer death," and by Act Jan. 15, 1897, c. 29, 29
Stat. 487 (U. S. Comp. St. 1901, p. 3620), it is provided that
the jury may qualify their verdict so as to provide for life im-
prisonment, instead of the assessment of the death penalty.   And
the United States courts have uniformly said that, inasmuch as
the statutes do not define the crime of murder, resort must be had
to the common law for its definition.   *United States v. King* (C.
C. 34 Fed. 302; *United States v. Lewis* (C. C.) 111 Fed. 630;
*United States v. Outerbridge,* 5 Sawy. 620, Fed. Cas. No. 15,978.

In *State v. De Wolfe,* 67 Neb. 321, 93 N. W. 746, it is said
that, while there are in Nebraska no common-law crimes, yet the
definition of an act, forbidden by statute, but not defined by it,
may be ascertained by reference to the common law.   To the
same effect are the cases of *Benson v. State,* 5 Minn. 19 (Gil. 6),
and *Prindle v. State,* 31 Tex. Cr. R. 551, 21 S. W. 360, 37 Am.
St. Rep. 833.   In *Wall v. State,* 23 Ind. 150, the cases of *Hackney
v. State,* 8 Ind. 494, and *Jennings v. State,* 16 Ind. 335, plain-
tiffs in error's sole reliance, were expressly overruled.   And in the case
of *Burke v. State,* 27 Ind. 430, which reviewed a prosecution under
a statute providing that "every person who shall erect, or con-

tinue and maintain, any public nuisance, to the injury of any part of the citizens of this state, shall be fined," etc., the court said:

"It is argued that as offenses in this state are created exclusively by statute, and, as we have an act requiring them to be defined by statute (1 G. & H. 416), the section above quoted is void, because it does not give the definition of a public nuisance. In *Wall v. State,* 23 Ind. 150, we had occasion to consider whether the Legislature, at one session, had any power to trammel a future session, as was supposed to be done by the enactment last referred to. It was held in the negative. But in any event, it would not avail the defendant in this case. There is no difficulty in understanding the section of the statute upon which this prosecution was founded. The phrase 'public nuisance' had a very definite meaning in the law long before the statute was enacted. To annex a definition of each word employed in the section was certainly never within the purpose of the Legislature. Such absurdity is not to be imputed to the law-making power. Was it then intended that in creating a crime, words having a comprehensive and exact legal meaning, embracing much in brief, must not be employed; that the virtue of such legislation should depend upon the vastness of its circumlocution? It is hardly conceivable that anything more was intended than that there should be no criminal prosecution in this state for any act, unless the Legislature had first declared it a crime, in intelligible terms, and fixed the punishment therefor. In that sense the enactment against public nuisances is consistent with it. It defines—i. e. marks out, with distinctness—a public nuisance as a crime."

In *State v. Oskins,* 28 Ind. 364, the same court held a statute good which provided that "any person who shall molest or disturb any meeting of inhabitants of this state met together for any lawful purpose shall be fined," etc., saying that "the words 'molest or disturb' have a well-defined meaning." See, also, *Hood v. State,* 56 Ind. 263, 26 Am. Rep. 21, and *State v. Berdetta,* 73 Ind. 185, 38 Am. Rep. 117, in which latter case the court, said, in substance, that while there are no common-law offenses in Indiana, and criminal prosecutions can be maintained only for offenses prescribed by statute, yet, where the statute does not specifically define the offense created, the common-law definition will be adopted. Here

the court also refers to the overruled case of *Hackney v. State,* and says: "All we need say of that case is that the doctrine which it declared has been completely exploded."

New York has a statute almost identical with the one under consideration; the only difference being that where our statute uses the expression, "which grossly disturbs the public peace or health," the New York statute reads, "which seriously disturbs or endangers the public peace or health." And in *People v. Most,* 36 Misc. Rep. 139, 73 N. Y. Supp. 220, the statute was held good; the court saying:

"The plain and obvious intent of this was to leave in the Code a little of the flexibility of the common law to meet cases which they had failed to specify in the preceding sections. That the words of this section are general is just what might be expected from the nature of the case. The purpose of the section is to try offenders for something not 'expressly prescribed by this Code.' If the offense was one expressly prescribed by the Code, then clearly the offender must be tried under the section prescribing it. It is only offenses not prescribed in the Code that can be tried under this section."

And in *People v. Wallace,* 85 App. Div. 170, 83 N. Y. Supp. 130, a conviction under the same statute was sustained. It is our conclusion that the statute is valid and enforceable; that any act which is wilful and wrongful, and which results in grossly disturbing the peace, is within its terms; that the acts charged in the information were well calculated to grossly disturb the peace, and if they actually did so, as the jury found, they constituted a violation of the statute in question, and were punishable.

The only other question presented and properly raised is that plaintiffs in error did not have a fair and impartial trial, in that one of the trial jurors was prejudiced against them, and had previously declared his belief of their guilt. This was alleged in the motion for a new trial, and was supported by the affidavit of one person who swore that prior to the trial he talked with said juror, and that the latter stated that in his opinion plaintiffs in error were guilty and should be convicted. The state offered nothing

in rebuttal of this affidavit, but stood on the statements of the juror made under oath on his *voir dire* to the effect that he knew nothing about the case and had formed or expressed no opinion in regard to the guilt or innocence of plaintiffs in error. We doubt whether the state may do this. Such an affidavit would seem to require a counter showing on the part of the state, especially if the oral testimony or the affidavit of the juror is obtainable. In other words, such an allegation supported by affidavit tenders an issue which the state should meet and the court should try out; and ordinarily, where no counter showing is made, the statements in the affidavit must be taken as true.

But in this case this matter furnishes no ground for a reversal, for the reason that all of the plaintiffs in error took the stand and admitted their guilt except Ira Butler, and practically all of the others testified that he was a participant in the offense. The testimony shows that they congregated at a public schoolhouse at night without the permission and against the will of the board of trustees, that they continually rang the large school bell, and whooped and yelled at intervals for an hour or two; that they were heard for more than a mile; that they disturbed at least two families in one of which there was an old lady feeble and sick. Here is a sample of plaintiffs in error's own testimony:

"Q. Did you holler? A. Why, we hollered a little. Q. Did you holler very loud? A. Sometimes we hollered I guess loud. Q. Was the hollering you did out there calculated to disturb anybody's peace? A. It might have."

As was said by Justice Harlan in *Motes v. United States*, 178 U. S. 458, 20 Sup. Ct. 993, 44 L. Ed. 1150, where the court held the defendant's constitutional right to have been violated by the introduction of certain evidence against him, "it would be trifling with the administration of the criminal law to award him a new trial because of a particular error committed by the trial court, when, in effect, he has stated under oath that he was guilty of the charge preferred against him."

Error in certain of the instructions given is urged, but the

record discloses no exceptions saved to the instructions complained of.

The judgment of the county court will therefore be affirmed.
FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.