## C. J. FESSLER v. STATE

No. A-2343.   Opinion Filed November 25, 1916.

(160 Pac. 1129.)

1. **POWER OF LEGISLATURE.** The Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce a certain defined or described result.

2. **LEWDNESS—Criminal Prosecution—Information.** An information, based on section 2793, Rev. Laws, which provides that any person who wilfully and wrongfully commits any act which grossly disturbs the public peace, or which openly outrages public decency and is injurious to public morals is guilty of a misdemeanor, and which charges that the defendant, a married man, and well known to the general public as being a married man, did lasciviously associate in public and private with an unmarried female, about eighteen years of age, and did openly and publicly go with and accompany the said female on and about the streets and other public places in such a manner and under such conditions as to be injurious to public decency and public morals, and that he did then and there openly and publicly go with and accompany said female to certain rooms and did lock himself in said rooms with the said female for the purpose of committing lascivious, lewd, immoral and indecent acts, all of said open, public and notorious conduct and acts of the said defendant with and toward the said

female did then and there grossly disturb the public peace, openly outrage public decency and injure public morals, is sufficient to charge an offense under the statute.

*Appeal from the Couty Court of Custer County*
*J. C. McKnight, Judge.*

C. J. Fessler, convicted of a misdemeanor, and appeals. Affirmed.

*A. J. Welch,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error was convicted of a violation of Sec. 2793 Rev. Laws, which is as follows:

"Any person who wilfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency and is injurious to public morals, although no punishment is expressly prescribed therefor by this chapter, is guilty of a misdemeanor."

The jury failed to fix the punishment, he was adjudged to pay a fine of one hundred dollars, and he appeals.

The information after alleging time and venue charged that he:
—"openly, wilfully, wrongfully and unlawfully committed acts, in the presence of and among divers and sundry persons in said county and state, which did then and there grossly disturb the public peace, openly outraged public decency and injure public morals in the manner and form as follows, to-wit:   The said C. J. Fessler, being a married man residing with his family in said county and state, and well known to the general public as being a married man and a man with a family, did then and there meet and lasciviously associate, in public and private, with one Floy Atkins, an unmarried female about eighteen years of age and not the wife of the said C. J. Fessler; and did then and there openly and publicly go with and accompany the said Floy Atkins on and about the streets of the City of Clinton, Oklahoma, and other public places, in such a manner and under such conditions, aforesaid, as to be injurious to public peace, public decency

and public morals; and did then and there openly and publicly go with and accompany the said Floy Atkins to certain rooms in the First State Bank Building and in the Thurmond Building, both in the said City of Clinton, and did then and there openly and publicly, in the presence and hearing of divers and sundry persons, lock himself in said rooms together with the said Floy Atkins for the purposes of committing lascivious, lewd, immoral and indecent acts and prostitution; all of said open, public and notorious acts and conduct of the said C. J. Fessler, with and toward the said Floy Atkins did then and there grossly disturb the public peace, openly outrage public decency and injure public morals, as aforesaid, contrary to" etc.

A demurrer was interposed to this information on the ground that the facts stated do not constitute a public offense.

The first assignment of error is based on the action of the court in overruling said demurrer.

Obviously the information is subject to criticism for redundance and unnecessary repetition, but the facts stated are clearly sufficient to charge a violation of the provision of the penal code above quoted.

Our code of criminal procedure provides that no information is insufficient by reason of a defect or imperfection in matter or form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. (Sec. 5747 Rev. Laws.)

The only other contention that we deem worthy of notice is that the evidence is insufficient to sustain the verdict.

The facts, which the testimony of numerous witnesses tended to show, were that the defendant, a married man, living with his family, consisting of his wife and one child in the town of Clinton, and Floy Adkins, a girl seventeen years old who lived with her parents in the town of Clinton, were often together, automobile riding in and around the town of Clinton; that the father of the girl while looking for her found her riding with the defendant in his automobile about ten o'clock at night.

Miss Floy Adkins testified that she went riding with the defendant in his "auto"; that the defendant made her a present of a bracelet some two weeks before his arrest, which had her name "Floy" engraved on it; that she was in the defendant's room with him when the deputy sheriff and others attempted to enter the room; that she did no know that the door was locked; that she went there to look at some pictures and to tell him that her father did not want her to go with him; that the defendant never made love to her and that his conduct toward her was not improper.

Tom Polk testified that he had a room rented in both buildings and that the defendant occupied these rooms with him; and paid half the rent; that witness used the rooms to sleep in; that he saw the defendant with Floy Adkins in their room in the Thurman Building; that he had seen the defendant and this girl out together at other places in both town and country, yet he never saw anything improper in their conduct.

The defendant as a witness on his own behalf testified that he is a real estate agent in the town of Clinton; that he occupied a room in the State Bank Building and previously to that a room in the Thurman Building; that he and Tom Polk occupied the same rooms and divided the rents between them; that he was at each of these rooms when they were visited by Miss Floy Adkins; that she telephoned to him in the Thurman Building that she wanted to see him about some pictures, and another time she telephoned to him that she had something to tell him, and he told her to go to his office and he would come; that the office was used by Tom Polk as a sleeping room, but the furniture belongs to him and he pays half of the rent; that this girl was in the room with him when the deputy sheriff and others demanded that he open the door. He admitted that he had often taken Miss Adkins riding in his automobile and that he bought her the bracelet and had it engraved and this after he had learned of her father's objections to his conduct with her. He denied that there was anything improper in their relations.

Thus it appears that this is a case in which the essential and controllings facts are without dispute.,

In the case of *Stewart v. State,* 4th Okla. Cr. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505, this court having under consideration the question of the validity of this provision of the penal code, held that the legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce a certain defined or described result, and that this statute is not void for uncertainty as to what acts the legislature thereby intended to penalize.

We think the common sense of the community as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it. That the conduct of which the defendant stands charged and convicted is rendered criminal by this statute is so indubitably indicated by both common sense and common morality as to make any argument in support of such conclusion wholly superfluous.

Having carefully examined the record in this case and finding no material error the conviction and judgment is affirmed.

ARMSTRONG AND BRETT, J. J., concur.