## HARRY MILES v. STATE.

No. A-4914.    Opinion Filed May 11, 1925.
(236 Pac. 57.)

(Syllabus.)

1.    Arrest—Search and Seizure After Lawful Arrest. A person lawfully arrested may, as an incident thereto, be searched, and incriminating articles found in his possession may be seized.

2. **Arrest—Arrest Without Warrant for Misdemeanor, When Legal.** Where the offense is not a felony, the officer cannot arrest without a warrant, unless the offense was committed or attempted in his presence.

3. **Arrest—Intoxicating Liquors—Search of Person or Seizure of Articles Found Thereon Illegal Where Made on Mere Suspicion of Violation of Prohibitory Laws.** No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having intoxicating liquor in his possession, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law.

4. **Criminal Law—Sufficiency of Definition of Offense in Statute.** The Legislature, in creating an offense, may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces or is reasonably calculated to produce a certain defined or described result.

5. **Breach of the Peace—Definition of "Pease."** The word "pease," in the phrase "breach of the peace," means the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members; that invisible sense of security which every man feels necessary to his comfort, and for which all governments are instituted.

6. **Arrest—"Breach of Peace" Defined.** "Breach of the peace," in view of the generally accepted definition and of constitutional provision (article 7, §19) that, "All indictments, informations, and complaints, shall conclude, 'Against the peace and dignity of the State,'" includes any violation of any law enacted to preserve peace and good order.

7. **Breach of the Peace—Element of Violence not Necessary.** It is not necessary that an act have in itself any element of violence in order to constitute a breach of the peace.

Appeal from County Court, Tulsa County; John P. Boyd, Judge.

Harry Miles was convicted of unlawful possession of intoxicating liquor, and he appeals. Affirmed.

R. M. Dick, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J.  Plaintiff in error, Harry Miles, was convicted of having in his possession 4 pints of corn whisky with intent to sell the same, and in accordance with the verdict of the jury he was sentenced to be confined in jail for 6 months, and to pay a fine of $500.  To reverse the judgment he appeals.

The evidence shows that one Wiggins had been a guest at the Ketchum Hotel in the city of Tulsa for two or three weeks, and had for several days occupied his room in an intoxicated condition.  During this time Mr. Gibson, manager of the hotel, observed the defendant leaving the hotel two or three times, and on the morning of the day of his arrest saw the defendant coming out of the room occupied by Wiggins.  He did not know the defendant's name, so he went to the sheriff's office and requested a deputy sheriff to come with him to the hotel. A few minutes after they arrived at the hotel the defendant came in and approached the elevator.  Mr. Gibson pointed to the defendant and told the officer that he was the man he saw going in and out.  The deputy sheriff arrested the defendant and searched him, finding 4 bottles of whisky on his person.

J. H. Quast, deputy sheriff, testified that on request of Mr. Gibson, manager, he went to the Ketchum Hotel with him, and a few minutes afterwards the defendant came in and approached the elevator; Mr. Gibson said, "There is the man"; and he arrested the defendant and searched him, finding 4 pints of whisky on his person; two in his hip pockets, and two in his coat pockets; that as he approached the defendant he saw a bottle in his left-hand coat pocket.  The prosecution admitted that the search was made without a search warrant, and without a warrant for the arrest of the defendant.

At the close of the state's evidence, the defendant made a motion to strike all the testimony on the ground and for

the reason that the arrest was made without a warrant, and that the testimony shows that no crime was committed in the presence of the officer at the time he made the arrest. The motion was denied. He then moved for a directed verdict in the form of a demurrer to the evidence, on the ground and for the reason that the evidence was insufficient to warrant a conviction. This was also denied.

The defendant contends that the search of and the seizure of the liquor found on his person was in violation of rights secured to him by the Constitution, and that the evidence obtained by such unlawful search was not admissible against him.

In the case of Keith v. State, 30 Okla. Cr. 168, 235 P. 631, we held that no search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having intoxicating liquor in his possession, or without a search warrant, unless and until the alleged offender is in custody under warrant of arrest, or shall be lawfully arrested without a warrant as authorized by law.

Consequently, in this case, the principal question presented is: Was the arrest of the defendant without a warrant illegal? The statute provides a peace officer may without a warrant arrest a person for a public offense committed or attempted in his presence. Section 2471, C. S. 1921. An offense is committed in the presence of an officer, within the meaning of the statute authorizing an arrest without a warrant, only when he sees it with his own eyes or sees one or more of a series of acts constituting the offense, and is aided by his other senses. An offense is likewise deemed committed in the presence of the officer where the offense is continuing, or has not been fully consummated at the time the arrest is made.

The present case is very different in its facts from the case of Keith v. State, supra. Here complaint had been

made by the manager of the defendant's conduct in the hotel, and the officer called to prevent the defendant from furnishing intoxicating liquor to a guest of the hotel. Upon the undisputed facts the defendant was a trespasser, and was committing a breach of the peace at the time of his arrest. It has been held that the constitutional guaranty of security of person from unreasonable search makes unlawful an arrest on mere verbal complaint to an officer by a citizen of trespass upon his property. See cases in annotation to Ex parte Rhodes, 1 A. L. R. 585.

In the present case the officer witnessed the trespass and the disorderly conduct of the defendant. He saw one of the bottles in defendant's pocket, and it in fact contained whisky. Our Penal Code provides:

"Any person who willfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency and is injurious to public morals, although no punishment is expressly prescribed therefor by this chapter, is guilty of a misdemeanor." (Section 2287, C. S. 1921.)

In the case of Stewart v. State, 4 Okla. Cr. 564, 109 P. 243, 32 L. R. A. (N. S.) 505, this court, having under consideration the question of the validity of this provision of the Penal Code, held that the Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result, and that this statute is not void for uncertainty as to what acts the Legislature thereby intended to penalize.

In Fessler v. State, 12 Okla. Cr. 579, 160 P. 1129, it is said:

"We think the common sense of the community as well as the sense of decency, propriety, and morality which most people entertain is sufficient to apply the statute

to each particular case, and point out what particular conduct is rendered criminal by it."

The statute provides that it shall be the duty of the sheriff, undersheriffs, and deputies to keep and preserve the peace of their respective counties. Section 5900, C. S. 1921. "The term 'breach of the peace' is generic, and includes all violations of public peace or order, or acts tending to the disturbance thereof." 5 Cyc. p. 1024, and authorities cited. Bishop says:

"A term of indefinite yet large meaning, sometimes greatly expanded. Commonly and more narrowly it signifies any criminal act of a sort to disturb the public repose." 1 Bish. New Cr. Law, § 536.

And this court has said, "A breach of the peace is a violation of public order; an offense of disturbing the public peace." Stewart v. State, supra.

In State v. Reichman, 135 Tenn. 653, 188 S. W. 225, Ann. Cas. 1918B, 889, it was held:

" 'Breach of the peace,' in view of the generally accepted definition, and of constitutional provision that all indictments shall conclude, 'against the peace and dignity of the state,' includes any violation of any law enacted to preserve peace and good order."

And further that:

"It is not necessary that an act have in itself any element of violence in order to constitute a breach of the peace."

And see Delk v. Commonwealth, 166 Ky. 39, 178 S. W. 1129, L. R. A. 1916B, 1117, Ann. Cas. 1917C, 884, annotation 889.

The definition of what constitutes a breach of the peace is stated as follows in 8 R. C. L. section 305:

"In general terms, a breach of the peace is a violation of public order, a disturbance of the public tranquility,

by any act or conduct inciting to violence or tending to provoke or excite others to break the peace. By 'peace,' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the natural right of all persons in political society. It is, so to speak, that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted. It is not necessary that the peace be actually broken to lay the foundation for a prosecution for this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals without the commission of the offense. The good sense and morality of the law forbids such a construction." See note in 13 L. R. A. 163.

The sale of intoxicating liquors has always been recognized as tending to provoke disturbances of good order and breaches of the peace. When such sales were lawful it was found necessary to impose upon them strict regulations to prevent breaches of the peace. "It is well known that an act which if committed at a certain place or time would not amount to a breach of the peace might well be considered as a crime if committed at another time or place and under different circumstances." People v. Johnson, 86 Mich. 175, 48 N. W. 870, 13 L. R. A. 163, 24 Am. St. Rep. 116. Possession of intoxicating liquor in a public place, with intent to violate provisions of the prohibitory liquor law, undoubtedly violates good order and tends to the disturbance of public peace and order, and, by well-settled rules of construction and logic, is a breach of the peace.

We are clearly of the opinion that, upon the undisputed facts in this case, the officer was authorized to arrest the

defendant, because his conduct in the presence of the officer constituted a breach of the peace.

It is well settled that it is not only the right but the duty of an officer making a lawful arrest to search and take from the arrested person any article connecting him with the commission of a crime, which may be used in evidence against him.

For the reasons stated, we are of opinion that the objection to the evidence, when offered in behalf of the state on the ground that it was obtained by unlawful search, was not well taken.

It follows that the court did not err in overruling the demurrer to the evidence and in refusing to direct a verdict of acquittal.

The judgment of the lower court is accordingly affirmed.

BESSEY, P. J., and EDWARDS, J., concur.