# RUBY RACHEL v. STATE.

# FRANK VINSON v. SAME.

No. 9736.   Nov. 27, 1940.
(107 P. 2d 813.)

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J.   Two informations were filed in the common pleas court of Oklahoma county on January 14, 1939, charging the offense of openly outraging public decency and injuring public morals.   The cases coming on for trial were by agreement in open court consolidated and the defendants were jointly tried.   Upon the trial the jury found the defendants guilty as charged in the informations, but was unable to agree upon the punishment.   Separate motions for new trial were duly filed, presented and overruled.   The court rendered judgments on the verdicts and sentenced the defendant Ruby Rachel to pay a fine of $500 and be imprisoned in the county jail for a period of six months, and sentenced the defendant Frank Vinson to pay a fine of $25 and be imprisoned in the county jail for a period of four months.

To reverse the judgments an appeal was taken by filing in this court on December 7, 1939, their consolidated petition in error with case-made attached.

The informations were drawn under Penal Code, sec. 1769, 21 Okla. St. Ann. § 22, which reads as follows:

"Every person who willfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, although no punishment is expressly prescribed therefor by this Code, is guilty of a misdemeanor."

One information, omitting formal parts, charged that in Oklahoma county, on the 14th day of January, 1939, Ruby Rachel did commit the crime of openly outraging public decency and injuring public morals in manner and form as follows: That the said defendant did then and there openly, willfully, wrongfully and unlawfully commit acts in the presence of and among divers and sundry persons which did then and there openly outrage public decency and injure public morals, in form and manner as follows, to wit: the said defendant being a white woman, did lasciviously associate with a negro man, to wit: Frank Vinson, and did hold sexual intercourse with said Frank Vinson, a negro man, at an apartment at Fifth and Stiles in Oklahoma City, said county and state.

The other information charged the defendant Frank Vinson with the same offense.

In the case of Stewart v. State, 4 Okla. Cr. 564, 109 P. 243, 32 L. R. A., N. S., 505, this court, having under consideration the question of the validity of this provision of the Penal Code, held that the Legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result, and that this statute is not void for uncertainty as to what acts the Legislature thereby intended to penalize. And see Miles v. State, 30 Okla. Cr. 302, 236 P. 57 44 A. L. R. 129; State v. Lawrence, 9 Okla. Cr. 16, 130 P. 508.

It is the contention of the defendants that the evidence is insufficient to sustain the verdicts, in that there was no evidence to support the essential element of the crime charged, of "openly" committing such acts, and in this connection "reversible" error was committed in refusing to sustain the demurrer to the state's evidence, and in refusing to direct the jury to return verdicts of acquittal."

The undisputed facts in evidence are that the defendant Frank Vinson, a colored man, occupied the rear room of an apartment house at 425 East Fourth Street, which had two entrances, one on the street and the other on the alley. This apartment is in the heart of the colored district. The defendant Ruby Rachel conducted the Ruby rooming house in the 100 block on Reno street. About 9 o'clock on the night of the date alleged, Nathan Baker, a colored city detective, saw Ruby Rachel get out of a taxicab at Fifth and Stiles; she walked south on Stiles, passed his car parked with the lights off, and he followed her until she entered the apartment at the alley entrance; he then drove around the block, stopped, walked up the alley and saw her sitting in a room talking to Frank Vinson. He then called two white officers, Kuykendall and McCurdy, city detectives.

Officer McCurdy testified that, accompanied by Officer Kuykendall, answering a call to meet a colored officer in colored town, they arrived at the place, and stood in the alley; he saw Ruby Rachel sitting on a chair in the room occupied by Frank Vinson; they were mixing some drinks; the officers stood in the alley about 30 minutes; standing in the alley they could not tell what was going on in the room, and they went around to where they could see in the window; the shade was drawn to within a foot of the bottom of the window, and they all had to stoop to look in.

The man had on pajamas, the woman removed her dress, leaving her slip on; they turned out the lights and got in bed. He turned his flashlight in the room and as far as he could tell they were having sexual relations. The officers broke open the door and went in; they found the woman in bed, covered up, and the man sitting on the side of the bed; they took them to the station and put them in jail.

Officer Kuykendall testified that he was with the officers, 425 East 4th, at the side window of an apartment, just off the alley; the window shade was down, and he could see Ruby Rachel in there with Frank Vinson, and they were drinking; she had her clothes off, all but her slip, and Vinson sat on the bed, with a pair of pajamas on; then they turned the lights out, and got in bed; that he turned his flashlight through the window, and saw Vinson on top of her and they broke in the door; that in a conversation with Ruby, she said Vinson had been nice to her; that she liked him, and she could not see anything wrong with it.

On cross-examination he stated that to reach this apartment they had to go up the alley; that there is no window on the alley side; that they had to go on around the corner of the building in order to look in the window.

When the state rested its case, the defendants interposed demurrers to the evidence on the ground that the same is wholly insufficient to establish the allegations of said informations, and is wholly insufficient as a matter of law to justify the court in requiring the defendants or either of them to put on any proof. Which demurrers were overruled and exceptions allowed.

The defendant Ruby Rachel, as a witness in her own behalf, testified that she ran a rooming house on West Reno, and that she was unmarried; she admitted that she

was at Frank Vinson's room as charged; that the entrance to this room is the door that opens from the alley; that she did not have intercourse with Vinson that night as the officers did not give them time.

She further testified that she was one-eighth Negro and one-eighth Creek Indian; that her mother was part Indian and part Negro.

On cross-examination she stated that she was born in Shattuck, Okla.; that her first husband was Rachel, part white man and part Indian, now dead; that her second husband was Daglish, a white man, part Indian, who divorced her when he found out she was part Negro; that her third husband was Switzer, a white man, and they were divorced in 1935; that her mother told her she was one-eighth Negro; that she was an only child and had always lived as a white woman.

The foregoing is a substantial statement of the evidence relied upon to support the convictions.

At the close of all the evidence counsel for the defendants moved the court to instruct the jury to return a verdict of not guilty as to each defendant, for the reason that the evidence failed to establish the material allegations of said informations. The motion was overruled, exceptions reserved.

Before a conviction can be had under Penal Code, sec. 1769, supra, it must be established that the act charged was openly done.

In the early case of Gunn v. Territory, 19 Okla. 240, 91 P. 861, 862, the Supreme Court of the Territory of Oklahoma held that the statute making it an offense to commit any act which " 'openly outrages public decency, and is injurious to public morals' " is directed against acts which are committed openly and affect the public.

A doctor's private office is not such a place as will give an act committed therein the character of an open act, especially when no one was present except the one against whom the act was committed.

In the opinion of the court it is said:

"If the defendant did the acts charged, he outraged decency and committed an act injurious to morals; but he did not openly outrage public decency and commit an act injurious to public morals."

In the case of Ex parte McClure, 6 Okla. Cr. 241, 118 P. 591, 592, in which this section was being construed, we said:

"It is a well-settled rule of the law that statutes prescribing punishment are to be strictly construed in favor of the defendant, and, where such a statute is capable of two constructions, the construction which operates in favor of the defendant is to be adopted."

In the case of West v. State, 27 Okla. Cr. 125, 225 P. 556, the court held:

"The commission of reprehensible indecent acts by a man of mature years with a female child of tender years, where no physical injury resulted, and where the acts complained of were done in private, does not come within the provisions of section 2287, Compiled Statutes 1921, sec. 1769 supra, 21 Okla. St. Ann. § 22 commonly known as the statute against outraging public decency."

Held further:

"Courts will not ordinarily, by judicial construction, enlarge the scope and operation of a penal statute beyond the commonly accepted meaning of the language of the statute, or of its clearly expressed limitations."

In Roberts v. State, 27 Okla. Cr. 97, 225 P. 553, 554, Henry Roberts, a white man, and Nancy Jiles, a negro woman, were charged under this section with disturbing the public peace and openly outraging public decency in

that they lived together in open and notorious adultery. The judgments were reversed by this court on the ground that the charge was duplicitous.

In the opinion it is said:

"In communities where white people and negroes reside, business relations between the races are inevitable, and just how far social relations should extend is a question concerning which good people entertain different ideas. Social equality between the races is of course unthinkable; such equality would bring about the moral degradation of both races. But from the proof in this case we cannot say, as a matter of law, that the conduct of these two individuals, exclusive of that testified to by Roberts' daughter, so outraged public decency or was so injurious to public morals as to constitute a crime under the provisions or within the meaning of the act above quoted. Not every moral dereliction is a crime within the meaning and intended operation of this statute."

And see Fessler v. State, 12 Okla. Cr. 579, 160 P. 1129; Perales v. State, 14 Okla. Cr. 601, 174 P. 1100.

In 46 C. J. 1110, the word "openly" is defined as follows:

"By some word or act which is an open declaration to those in the neighborhood; in an open manner; not clandestinely; not privately or in private; not within a concealed place or inclosure; publicly, in the sense of not being concealed; publicly to the people in view, whether upon public or private property; without secrecy."

The term "openly," as used in the statute providing that every person who willfully and wrongfully commits any act which openly outrages public decency and is injurious to public morals, is guilty of a misdemeanor, means in an open manner, not clandestinely; not privately, or in private, and is used in the sense of not being concealed, as opposed to being hidden or secret.

The offense created by this provision of the statute does not depend on the number of people present. It is enough if it be an intentional act of lewdness, offensive to one or more persons present, whether upon public or private property.

In the case at bar the evidence discloses that the acts charged occurred at night in the apartment of the defendant Vinson, the shades on the windows were drawn, and it was only by stooping down and peeping in the window that the officers were able to see the defendants; no one but the officers did see them in bed; this they did by turning their flashlights through the window after the lights inside were turned off; there was nothing done openly, it took place clandestinely, in private. Oklahoma has no statute making fornication an offense. However, fornication, if openly done, may be a violation of this section of the Penal Code. Upon the undisputed facts we think it was immaterial as to whether or not the defendants engaged in an act of sexual intercourse.

The Code of Criminal Procedure provides:

"If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant." Section 3090, Sts. 1931, 22 Okla. St. Ann. § 850.

At the close of the evidence it is the province of the trial court to determine whether or not there is any substantial evidence which would authorize the submission of an issue of fact to the jury.

We have considered all the evidence, and have concluded that the evidence for the state was not sufficient to warrant a conviction, and the trial court should have advised the jury to acquit the defendants by returning verdicts of not guilty.

This court is bound by the record before us, and applying the law to the undisputed facts in evidence, the opinion of the court is that the evidence wholly fails to support a conviction of openly outraging public decency and injuring public morals within the meaning of this provision of the statute as construed in the cases above cited.

For the reason that the judgments are not supported by evidence sufficient to establish the essential elements of the crime of openly outraging public decency, the judgments of the common pleas court of Oklahoma county must be reversed and the cases remanded, with direction to dismiss, and it is so ordered.

BAREFOOT and JONES, JJ., concur.