## HIXON v. STATE.

No. A-11710. Feb. 25, 1953.

(254 P. 2d 387.)

Leonard G. Geb and George P. Moriarty, Ponca City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

JONES, J. The defendant, Bobbie Dean Hixon, was charged by an information filed in the county court of Kay county with committing an act which did "openly outrage public decency" in that said defendant walked up to an automobile parked on a street in Ponca City and, in the presence of divers persons, did insert his hands into his trousers and "did annoy and offend the persons present by his continued manipulations of his fingers and hands inside his trousers," was tried, convicted and sentenced to serve 90 days in the county jail and pay a fine of $100 and has appealed.

There was no appearance made for defendant at the time the case was set for oral argument and there has been no brief filed in his behalf. Under Rule 9 of this court, 22 O. S. A. c. 18 Appendix, in such cases we examine the record for fundamental error and if none is found, the case is affirmed.

We have read the record and the evidence of guilt is so weak that in all fairness, despite the apparent abandonment of the appeal, we believe that the judgment and sentence should be modified.

There were five witnesses who testified besides the defendant and all of them were subpoenaed by the state. Three of these witnesses were females, the youngest 16 years of age and one of them being a young married woman. These girls testified in substance that they were on their way home about 11 p.m. from attending a theatre in Ponca City, that as they walked along the sidewalk, a car, driven by Jack Huster and J. T. Bruce, who were two youths well-known to them, pulled up to the curb and asked them to go driving with them, that while the girls were standing on the outside of the car talking with the boys the defendant came up to the automobile and asked for a light for a cigarette. They recognized the defendant as a young man they had seen with John Boriss. After some conversation with the parties, the defendant demanded to see the boys' registration cards. One of the boys started around the car to show the defendant his registration card and the girls followed him to see what the defendant looked like.

One girl testified:

"And as we went around the car the very first thing I could see was he had his hands inside his pants."

"Everytime he fooled with himself he would look at us girls.

"Q. Did he keep his hands there very long? A. Yes, sir. As far as I know he might have had it in there all the time."

The next girl testified:

"Q. Did you ever see his hand inside his trousers at any time? A. I wouldn't say whether he had it inside but he was certainly fooling with himself. Q. Were

his hands outside his trousers? A. Part of the time, yes. Q. Were his hands down to his private parts? A. Yes."

The married lady, who was a waitress at a beer tavern, testified that when J. T. took his billfold out and started to show it to the defendant, she said: "For Christ's sake, J. T., don't give it to him." She further testified that she followed J. T. around the car and further testified:

"A. I went around and asked him if he would mind telling us his name, he was demanding our names, and I asked if he would mind telling us his. He was standing there with his hands inside of his trousers. Q. Were his hands there when you first came around? A. They were there when I went around. Q. About what portion of that time did he have his hands inside his trousers? A. The full time he was standing by the car and I was around it."

The girls each testified that the defendant used no profane or vulgar words and made no improper suggestions at all to them, but that they were all shocked at the way he was playing with himself and that finally the defendant left and they watched him go over to some bushes. They also testified that the defendant appeared to be intoxicated.

Jack Huster and J. T. Bruce testified to meeting the girls at the time and place related by the girls. They further testified the defendant came to their car and they could smell intoxicating liquor on his breath. Each of them testified that they never saw him playing with his private parts with his hands as related by the girls. They further corroborated the testimony of the girls that the defendant used no vulgar language and made no improper suggestions.

The defendant testified in his own behalf that he lived at Raymond Boriss' which was across the street from the place where the parties had parked their car on the night in question. He stated that he had parked his car and was attracted by the noise and laughing and walked out to the car and told them they were disturbing the peace, he told them it was nearly midnight and that they should be at home, that the boys said they were old enough to be out and one conversation led to another and he told them he did not believe they were as old as they said and asked to see their draft cards so they showed him their draft cards. He did not at any time play with himself in the manner related by the girls.

In the case of Rachel v. State, 71 Okla. Cr. 33, 107 P. 2d 813, 814, this court held:

"The provision of the statute making it an offense to commit any act which openly outrages public decency and is injurious to public morals (21 O.S. 1951 § 22) is directed against acts which are committed openly and affect the public.

"The term 'openly' as used in the statute providing that every person who wilfully and wrongfully commits any act which openly outrages public decency and is injurious to public morals is guilty of a misdemeanor, means in an open manner, not clandestinely, not privately or in private, and is used in the sense of not being concealed as opposed to being hidden or secret."

In the more recent case of Zimmerman v. State, 77 Okla. Cr. 374, 141 P. 2d 809, 810, it was held:

"In prosecution for grossly disturbing the public peace, the acts relied upon to prove the commission of a crime must be public in character and such as actually tend to disturb the public peace and quiet.

"Where accused is prosecuted under statute for grossly disturbing the peace, it is not sufficient to show that he only committed acts which would be a breach of the peace under 21 O.S. 1941 §§ 1362 or 1363."

The most that can be said in support of the state's case is that the evidence is not strong. Even giving the testimony of the females the fullest weight to which it is entitled and wholly disregarding the testimony of their male companions, it presents the case of an intoxicated man who was fidgeting and playing with his private parts and that as quickly as he left the automobile he walked over to some bushes evidently to relieve himself. The girls testified they could not see the defendant's hands as he was on the opposite side of the car but they could tell he was moving his arms. If they had not walked around the car they would have been unable to have seen the alleged indecent conduct. It is conceivable that he was deliberately committing an indecent act in the presence of the ladies and for that reason we shall sustain the state's case, especially in the absence of a brief or argument challenging the sufficiency of the evidence.

However, we think the ends of justice will be met by modifying the sentence which was imposed to a fine of $100 and costs.

It is therefore ordered that the judgment and sentence of the county court of Kay county is modified by reducing the sentence from 90 days in the county jail and a fine of $100 to a fine of $100 and the judgment and sentence as thus modified is affirmed.

POWELL, P. J., and BRETT, J., concur.