BARKDULL, Chief Judge.
The following facts gave rise to this cause: Officer Brown, of the Miami Police Department, had observed the appellant-defendant on many occasions in the vicinity of N.W. 5th Street and N.W. 3rd Court and 3rd Avenue; she did not live in this area. Her conduct followed a pattern whereby, when an automobile would stop at the traffic light, the appellant would go into the street and engage in conversation with the driver or occupant; she would continue this course of conduct late into the night. On approximately forty different occasions, the officer told the defendant to move on and not to loiter in the area. On the night in question, Officer Brown observed her once again, in the same area, entering into the street to stop and talk to motorists who had stopped at the light. The officer warned the appellant to stop loitering and to get out of the street at about 7:00 P.M. The officer left the area and upon his return a short time later he observed her still in the area. While he was watching her, the defendant again entered the street to talk to a motorist who had stopped at the light. Thereupon the defendant was arrested and charged with violation of § 856.021, Fla.Stat., in that she did unlawfully loiter or prowl in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for safety of persons or property in the vicinity. Following trial in the Juvenile Division of the Circuit Court, she was found to have committed the offense. A delinquency adjudication was withheld, and she was placed under the supervision of a counselor with the Florida State Division of Youth Services.
The defendant contends that there is no evidence that her conduct constituted “loitering and prowling”; there was no threat to property or person, breach of the peace, etc.; the loitering and prowling statute has been unconstitutionally applied to the defendant’s behavior.
The Florida loitering and prowling statute, § 856.021, Fla.Stat., has recently been upheld as constitutional. State v. Bcker, Fla.1975, 311 So.2d 104. The purpose of the statute, as stated by the Supreme Court of Florida, is:

“* * * to provide law enforcement with a suitable tool to prevent crime and allow a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property.” (emphasis added)

The court construed the statute as containing two elements which must be established in order to establish a violation of the statute :

“* * * As previously noted, the statute contains two elements: (1) loitering *554 or prowling in a place at a time and in a manner not usual for law-abiding individuals, and (2) such loitering and prowling were under circumstances that threaten the public safety. Proof of both elements is essential in order to establish a violation of the statute. This statute comes into operation only when the surrounding circumstances suggest to a reasonable man some threat and concern for the public safety. * * *”

We find that the evidence and reasonable inferences therefrom meet these tests.
The events which took place occurred at night from approximately 7:00 to 7:40 P. M. The officer testified that he had observed the defendant on previous occasions and had written approximately forty field cards on the defendant. The officer stated that he could not recall the number of vehicles the defendant approached on July 11, 1975. The record reveals that the defendant was a young mother, who spent nights on a street corner located in an area where the defendant did not live, approaching vehicles and conversing with the drivers. The record demonstrates that the first element of the offense charged, to wit: loitering or prowling in a place at a time and manner not usual for law-abiding individuals, is satisfied. It is not usual for a teenage mother to frequent a street corner at night, continually ignore warnings by a police officer, approach motor vehicles, and converse with the drivers.
The second element necessary to establish a violation is that such loitering and prowling were under circumstances that threaten the public safety or a breach of the peace. The Supreme Court of Florida has construed the words “under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity” to mean those circumstances where peace and order are threatened or whether the safety of persons or property is jeopardized. State v. Ecker, supra. § 856.021, Fla.Stat. comes into operation where either a breach of peace is threatened or the public safety is involved:
“* * * This statute only authorizes an arrest where the person loitering or prowling does so under circumstances which threaten a breach of the peace or the public safety. * * * ” (emphasis added)
 In the instant case the arrest was valid because the defendant was loitering under circumstances which threatened a breach of peace or a disruption of traffic. There is no statute defining a breach of the peace in Florida and, in the absence of an ordinance defining the breach of the peace, the existence of a breach of the peace depends upon the common law. Op. Atty.Gen. 056-296, October 2, 1956. “Breach of the peace” is a generic term including all violations of the public peace, order or decorum. 11 C.J.S. Breach of the Peace § 1 (1938). A breach of the peace includes the violation of any law enacted to preserve peace and good order. Miles v. State, 30 Okl.Cr. 302, 236 P. 57, 44 A.L. R. 129 (1925). In the instant case Officer Brown had substantial reason to believe the defendant was committing a misdemeanor in his presence, to wit: soliciting or offering to commit prostitution in violation of § 796.07, Fla.Stat., particularly § 796.07(3) (a), (b), (c), Fla.Stat. No overt act, to wit: sexual intercourse, is required to complete the offense and the mere act of solicitation is a violation of § 796.07, Fla.Stat. Pauline v, Lee, Fla.App.1963, 147 So.2d 359. A breach of the peace was threatened because the defendant, as perceived by the police officer, was violating the law against prostitution which was enacted to preserve peace and good order in the community.
It should be further noted that the police officer performed his duty and complied with the statute by affording the defendant an opportunity to dispel any alarm *555 or immediate concern. See: § 856.021(2), Fla.Stat. There is a presumption that officials properly performed their required duties. Jones v. State, Fla.App.1974, 296 So.2d 519; Purdy v. Mulkey, Fla.App.1969, 228 So.2d 132; North v. Chapman, Fla. 1954, 74 So.2d 787; Montgomery v. State, 53 Fla. 115, 42 So. 894. In the absence of evidence to the contrary, the presumption is not overcome. In the instant case, the defendant did not present any evidence that Officer Brown did not properly perform his duty. Furthermore, there is evidence that the arresting officer performed his required duty of confronting the defendant prior to arrest. The evidence is also subject to the view that the defendant’s actions were such as to be an impairment to the flow of traffic in and about this intersection.
The appellant further contends that certain evidence of forty field cards, which had been written on her in the past, was impermissibly admitted. The Williams Rule does not justify such irrelevant testimony. The appellant further contends that this evidence is inadmissible and not relevant since the facts were not crimes and do not fall under the Williams Rule, and that the acts merely displayed a propensity on the part of the defendant to speak to occupants of cars.
Under the rule of evidence commonly known in Florida as the Williams Rule, the test of admissibility of evidence is the relevancy of the evidence to some issue of the case being tried. Williams v. State, Fla.1959, 110 So.2d 654; Tafero v. State, Fla.App.1969, 223 So.2d 564; Dean v. State, Fla.1973, 277 So.2d 13. In Williams v. State, supra, the Supreme Court of Florida stated:

“* * * Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. * * * The test of inadmissibility is a lack of relevancy.” (emphasis supplied)

The court further noted that evidence relating to similar facts, which point to the commission of a separate crime, is admissible if found to be relevant:

“* * * evidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried. * * * ”

In the instant case, the evidence objected to, to wit: that the police officer wrote approximately forty field cards on the defendant in the past, is relevant as it tends to prove the defendant’s purpose, plan or design and the identity of the defendant. That the defendant frequented the street corner, not near her home, at night on previous occasions is relevant to show the defendant’s purpose of plan as well as her identity as being the same person at the corner on previous occasions as during the night in question.
The Williams Rule applies to similar fact evidence which tends to reveal the commission of a collateral crime. See: Williams v. State, supra. In the instant case, the similar fact evidence tended to reveal the commission of a collateral crime, to wit: solicitation of prostitution.
The evidence objected to is relevant as to the questions of identity, plan, or design of the defendant and is admissible under the Williams Rule. A trial judge has wide discretion to determine what evidence is material and relevant. United States v. Calles, 5th Cir. 1973, 482 F.2d 1155.
*556 Therefore, we sustain the actions of the trial judge under review.
Affirmed.
CHARLES CARROLL, Associate Judge, dissents.