462 So.2d 581 (1985)
Robert B. EDWARDS, Petitioner,
v.
STATE of Florida, Respondent.
No. 84-2154.
District Court of Appeal of Florida, Fourth District.
January 23, 1985.
Rehearing Denied March 6, 1985.
Ted B. Edwards, of Akerman, Senterfitt & Eidson, Orlando, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for respondent.
GLICKSTEIN, Judge.
Petitioner seeks review by writ of certiorari of the circuit court's affirmance of the *582 county court's denial of a motion to suppress. We deny the petition but opt to write because of the uniqueness of the legal issue.
The facts that precipitated all of this judicial attention began at about 9:30 p.m. on July 22, 1983, when petitioner was driving his pickup truck on a highway outside the city limits of Okeechobee in a dangerous fashion. An off-duty law enforcement officer from Okeechobee and an auxiliary officer were behind petitioner in the auxiliary officer's van and followed him for about five miles. In that distance, they observed him crossing the center line three to seven times. Most important, petitioner's erratic driving forced approaching vehicles to run onto the berm. As for being a danger to himself, both officers testified that petitioner almost hit a bridge abutment before coming to a halt after being signalled to stop.
The off-duty officer approached petitioner after the stop and identified himself as such. He was not in uniform, displayed no badge, and had neither weapons nor handcuffs. He examined and retained petitioner's driver's license; and although he did not arrest petitioner or give him a sobriety test, he clearly detained him. While waiting for a highway patrolman to appear petitioner admitted he had imbibed too much. Thirty minutes later he failed the patrolman's roadside sobriety tests, whereupon the patrolman transported petitioner to the county jail, where he failed a breathalyzer test. Petitioner was then formally arrested for driving while intoxicated.
Petitioner unsuccessfully sought to suppress the test results, the state's witnesses' testimony about his visual appearance at the time, and his own statements, as fruits of an illegal arrest. When his suppression motion was rejected in county court, he pled nolo contendere but reserved the right to appeal the denial of his suppression motion. His appeal to the circuit court also failed, and he petitioned this court for writ of common law certiorari. The issue before us is whether the circuit court departed from the essential requirements of law when it affirmed the county court's denial of petitioner's motion to suppress, inasmuch as an off-duty officer outside his jurisdiction may not detain a person under color of office unless a private citizen could arrest that person; and there is no common law right of a private citizen to arrest someone for committing a misdemeanor that is not a breach of the peace.
The circuit court found that Officer Ammons, the off-duty officer, did not employ any special police powers in arresting petitioner, and that the "under color of office" doctrine did not apply. It also held that Officer Ammons properly exercised his power as a private citizen to arrest petitioner, whose conduct constituted a breach of the peace because it posed a threat to himself, other motorists and pedestrians. We agree with that conclusion.
It is clear that a police officer in fresh pursuit of a felon or misdemeanant or violator of traffic laws has the right of arrest outside his jurisdiction. See Cheatem v. State, 416 So.2d 35 (Fla. 4th DCA 1982). None of those was applicable here, placing Officer Ammons in the same position as a private citizen. At common law, a private citizen may arrest a person who in the citizen's presence commits a felony or breach of the peace, or a felony having occurred, the citizen believes this person committed it. State v. Schuyler, 390 So.2d 458, 460 (Fla. 3d DCA 1980); and Schachter v. State, 338 So.2d 269, 270 (Fla. 3d DCA 1976). Neither Officer Ammons' identification of himself as an off-duty law enforcement officer nor his offer to show petitioner his badge constitutes acting under color of office. See Phoenix v. State, 455 So.2d 1024 (Fla. 1984).
The issue boils down to whether petitioner's conduct amounts to a breach of the peace. We cannot think of a more apt illustration of such breach of the individual and collective peace of the people in Okeechobee County than to have a drunk driver at the wheel of a killing machine that is going all over the road and scaring oncoming drivers to death rather than killing them. What is petitioner's view of a *583 breach of the peace? Is it that the drivers of the oncoming vehicles who were forced onto the berm should have been forced completely off the road or actually hit? Is it that only those incidents which occur on foot or in areas of assembly can constitute a breach of the peace? Is it that repeatedly honking an automobile horn late at night is a breach of the peace but that causing other drivers to leave their lane of travel out of fear or great concern is not?
In B.A.A. v. State, 333 So.2d 552, 554 (Fla. 3d DCA 1976), the court said:
In the instant case the arrest was valid because the defendant was loitering under circumstances which threatened a breach of peace or a disruption of traffic. There is no statute defining a breach of the peace in Florida and, in the absence of an ordinance defining the breach of the peace, the existence of a breach of the peace depends upon the common law. Op.Atty.Gen. 056-296, October 2, 1956. "Breach of the peace" is a generic term including all violations of the public peace, order or decorum. 11 C.J.S. Breach of the Peace § 1 (1938). A breach of the peace includes the violation of any law enacted to preserve peace and good order. Miles v. State, 30 Okla. Cr. 302, 236 P. 57, 44 A.L.R. 129 (1925). (Emphasis in original)
The law resembles the dance or any other form of human experience in that its life is dependent upon evolving discovery. Only when the law imitates the legendary ostrich does Samuel Johnson's rancorous condemnation seem hard to wash off. So we not only feel comfortable in considering petitioner's conduct a breach of the peace, we also feel petitioner and his Okeechobee neighbors are fortunate that we are discussing only a breach of the peace and not a highway disaster. Someone must have been watching over all of them at 9:30 p.m. on July 22, 1983, when petitioner was behind the wheel, drunk, on a public highway.
DELL, J., concurs.
WALDEN, J., concurs in conclusion only.