(85 App. Div. 170.)

PEOPLE v. WALLACE et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. BREACH OF THE PEACE—POLITICAL MEETINGS—BLOCKING STREETS.
    Under Pen. Code, § 675, declaring any person guilty of a misdemeanor who willfully commits any act which seriously disturbs or endangers the public peace, where defendants persisted in dragging boxes into the street, and in loudly haranguing the crowds, blocking the street, in defiance of the police, and the jury have found them guilty of seriously disturbing the public peace, the conviction will not be disturbed.
    Parker, P. J., dissenting.

Appeal from Montgomery County Court.

John E. Wallace and Edmund Lake were convicted of a misdemeanor in the Court of Special Sessions, and from a judgment affirming the same they appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Benjamin Patterson, for appellants.

Frank G. Kelsey, Dist. Atty., and Louis S. Carpenter, for the People.

CHASE, J. The defendants were convicted of violating section 675 of the Penal Code. That section of the Penal Code, so far as. the same is material in this case, reads as follows:

"Sec. 675. * * * A person who willfully and wrongfully commits any act * * * which seriously disturbs or endangers the public peace * * * for which no other punishment is expressly prescribed by this Code, is guilty of a misdemeanor. * * *"

On the 16th day of September, 1901, an organizer of the Socialist Labor Party served a notice on the chief of police of the city of. Amsterdam "that a meeting under the auspices of the Socialist Labor Party will be held Saturday, September 21, 1901, at 8 p. m., at the corner of West Main and Market streets. We request that you see this meeting is policed for the preservation of order." The place was. at the intersection of business streets which crossed each other at right angles, and was one of the busiest portions of the city.

Prior to the meeting the defendants obtained two dry-goods boxes, one of which was placed in the street near the curb, and upon which was piled literature for distribution and for sale. The other was. placed at or near the center of West Main street, and a few feet from the line of Market street. About 8 o'clock said organizer stood on the box in the center of the street, and told those within his hearing. that they were about to hold a public meeting of the Socialist Labor Party, and then introduced the defendant Lake. Lake talked for 15 or 20 minutes without being disturbed. The chief of police then approached Lake, and asked him if he had a permit from the mayor to hold a meeting there. Lake replied, as testified to by him:

"I told him the Socialist Labor Party was a regular political party, which occupied the third column on the official ballot of New York state, and that the Constitution of the United States granted the right of free speech, and the public assemblage of people in any highway in the country, and we didn't need a permit from any mayor to exercise that right."

The chief of police then went away and returned in a short time with another officer. During the time the chief of police was away Lake continued to address the crowd, which was increasing in numbers. When the officers returned the sidewalks were wholly blocked, and the street was filled with people blocking the same, except on one side, where it was open for the passage of vehicles. The chief of police then stated to Lake that he was obstructing the street, and would have to stop speaking, to which Lake replied, as testified to by him:

"I told him there was a passageway in which two teams could pass each other on the opposite side of the street, and the street was not obstructed by

one man standing on a box; if the sidewalks were not cleared, it was the duty of the police to keep them clear."

The officers then attempted to clear the sidewalks and street without interfering with the speaker, and they were unable to do so. The crowd continued to increase in numbers, and the officers went away, and were gone for 10 or 15 minutes, during which time the defendant Lake addressed the crowd, and when the chief of police returned he had with him most or all of the police force of the city, and he then found that the crowd numbered from 2,000 to 4,000 people, and that the intersection of the streets, the sidewalks, and the several streets leading thereto were wholly blocked to pedestrians and teams. An ineffectual effort was made to clear the streets. The defendants were then requested to stop speaking, but they refused to do so. The officers made a further effort to clear the streets, and removed the boxes to the sidewalk. The defendants resisted such efforts, and the defendant Wallace dragged one of the boxes back to the center of the street, and both defendants jumped upon the box from time to time, and addressed the crowd from the box and from the ground. The crowd was increasing in numbers and in density, there were cat-calls and hisses, the defendants were speaking very loud, from the crowd threats were heard, and one man was struck by a stone. The chief of police was called upon by different persons to clear the streets. The situation was growing worse continually, and a general breach of the peace was imminent. The police were unable to handle the crowd so long as the defendants persisted in speaking. They were arrested and taken to the station house, after which the police without difficulty dispersed the crowd. Written information was filed against the defendants for violating section 675 of the Penal Code, "in that at the time and place aforesaid they did annoy and interfere with various persons in said city by offensive and disorderly acts and language, and did seriously endanger the public peace."

The question of the constitutional right of citizens to peaceably assemble and discuss public questions is not before us for discussion, neither is it necessary to determine whether such constitutional right authorizes a person to hold a public meeting in a public street without the permission of the municipality. Streets and highways are for the use of all the public to pass and repass thereon, and it is the duty of the police authorities of a city to see that a reasonable passageway is preserved. That the public peace was seriously disturbed and endangered at the time of the defendants' arrest cannot be doubted by any one who examines the record herein. Whether such serious disturbance and danger was caused by the defendants was a question of fact presented to the jury, after all parties had had a full and fair opportunity to present their evidence in relation thereto. Whatever other influences may have aided in bringing about the situation as it existed immediately before the arrests were made, it is reasonably certain that the persistence of the defendants in dragging their boxes into the street, and in loudly haranguing the crowd in defiance of the police and the sentiments of those there congregated, were at that particular time the immediate causes of the serious

disturbance and danger to the public peace. As said by the Court of Appeals in People v. Most, 171 N. Y. 423, 64 N. E. 175, 58 L. R. A. 509:

"A breach of the peace is an offense well known to the common law. It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which by causing consternation and alarm disturbs the peace and quiet of the community."

The jury has found the defendants guilty of seriously disturbing and endangering the public peace, and the verdict is not against the weight of evidence.

The judgment of conviction should be affirmed. All concur, except PARKER, P. J., who dissents.