SHAW, J.
Three separate complaints were filed in the
municipal court and tried together. Appeals by all the defendants from judgments of conviction entered against them are now presented to us on a single record. In each case the charge was that the defendants named in the complaint “did wilfully and unlawfully assemble for the purpose of disturbing the public peace and committing an unlawful act, to-wit: a violation of 415 of the Penal Code, and did fail and refuse to disperse on being desired and commanded so to do by a public officer, to-wit: (naming a different officer in each case) a police officer of the city of Los Angeles”, in violation of section 416 of the Penal Code.
*767 Section 416 just mentioned provides that “if two or more persons assemble for the purpose of disturbing the public peace, or committing any unlawful act, and do not disperse on being desired or commanded so to do by a public officer, the persons so offending are severally guilty of a misdemeanor”. In order to show an offense under this section four facts must appear, viz.: (1) An assembly by two or more persons, (2) for the purpose of disturbing the public peace or committing an unlawful act, (3) that such persons be desired or commanded by a public officer to disperse, and (4) that they then fail to do so. The language of the section as to the first and fourth of these facts is so clear as to need no elucidation, but as to the second and third some discussion seems proper.
The unlawful purpose charged in this case is to disturb the public peace and to violate section 415 of the Penal Code. The only part of section 415 that could possibly be material here is that providing for the punishment of “every person who maliciously and wilfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight or -fighting”, and this adds little to the phrase “disturbing the public peace” appearing in section 416. The expressions, “disturbance of the peace” and “breach of the peace”, are substantially synonymous, and have a well-understood legal meaning. “Breach of the peace has been defined as a violation of the public tranquility and order—the offense of breaking or disturbing the public peace by any riotous, forcible or unlawful proceeding.” (4 Cal. Jur. 471, citing Black’s Law Diet.) “The term ‘breach of the peace’ is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by any act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.” (9 Cor. Jur. 386, citing cases.) “A breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act *768 or conduct inciting to violence, or tending to provoke or excite others to breach the peace.” (8 R. C. L. 284.) “It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.” (People v. Most, 171 N. Y. 423 [58 L. R. A. 509, 64 N. E. 175]; People v. Wallace, 85 App. Div. 170 [83 N. Y. Supp. 130, 133].) The term “breach of the peace” includes all violations of the public peace and order, and may include disturbances in the night-time by shouting alone, though the expressions used are innocent and harmless. (State v. Christie, 97 Vt. 461 [34 A. L. R. 577, 123 Atl. 849].)
The assembly described in section 416 appears to be included within the definition of an “unlawful assembly” stated in section 407 of the Penal Code. Consequently the offense defined by section 416 is similar to that punishable under section 409, which declares that “every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse” (with certain exceptions) is guilty of a misdemeanor. In People v. Sklar, (1930) 111 Cal. App. Supp. 776 [292 Pac. 1068], we held that the words just quoted from section 409 refer to section 726 for a definition of a lawful warning. In this case the commands were similar to those considered in People v. Sklar, and would be insufficient to comply with section 726, under the rule declared in that case. It is therefore necessary to determine whether section 726 applies to the proceedings of officers acting under section 416.
There are several differences between section 416 on the one hand, and sections 409 and 726 on the other. Section 409 is manifestly incomplete in not stating what constitutes a lawful warning, and a reference to section 726 is necessary to supply the omission, that being the only section which could serve such purpose, while section 416 appears to be complete in itself, on this point, and needs no cross-reference. Section 416 confers power to order a dispersal of the assembly on “any public officer”, but section 726 gives such power only to certain enumerated officers, who are far from constituting the entire class of “public officers ’ and therefore section 72'6 does not fully cover the *769 situation provided for by section 416. For these reasons we conclude that section 726 is not applicable to the cases provided for in section 416. If police officers go among the persons assembled and direct them severally to “move on” or to leave the place where they are assembled, or use other similar words, this is in effect a command to disperse and is a sufficient compliance with this requirement of section 416, at least as to the persons to whom such commands are addressed.
While every assembly subject to the provisions of section 416 may also be dispersed under sections 409 and 726, and the construction we give to section 416 results in two modes of procedure for the dispersal thereof, yet there is discernible some ground for such a course of legislation. Under section 409, an assembly for the doing of a lawful act in a violent, boisterous or tumultuous manner may be dispersed, and an offense is committed by every person not in the excepted classes, who remains at the place of assembly, after the proper warning, although he may not have participated in the assembly; whereas the assembly denounced in section 416 must be for an unlawful purpose and only the participators therein may be punished for failure to disperse on command. The legislature may have thought that these differences justified a more summary mode of proceeding under section 416.
While we have before us three separate complaints, the events from which they' arose were so connected that the jury might have considered them all part of a single transaction or at least the result of a single plan in which all the defendants participated. All these events happened about 2 P. M. on September 1, 1930, on public streets, and within a distance of about one block from the public square or park known as the Plaza. An organization holding Communist doctrines and known as the Trades Union Unity League had called what its members referred to as a “demonstration against unemployment”, to be held at this time at the Plaza, and large crowds were gathered on all the streets in this vicinity, in places blocking the sidewalks and even the roadways. All of the defendants were members of the Trades Union Unity League and had come to the neighborhood of the Plaza either to speak or otherwise to *770 assist in the “demonstration”. The defendants all took the stand, and from their evidence, taken with the circumstances appearing from other testimony, the jury could properly infer that they were all acting in concert and with a common purpose in so assembling, that whatever was done by ■ any one of them was in furtherance of their common design, and hence that all were equally responsible criminally for the acts of any of them. Looking at the ease from this standpoint it appears that all the defendants were a part of one assembly, although the overt acts committed by them may be divided into three occurrences separated by a space of a city block and a time interval of a few minutes.
The defendant Olson was raised on the shoulders of defendants Snyder and Anderson, on Main Street about fifty or sixty feet south of Arcadia Street, and began to make a speech. Speaking in the streets is not prohibited there. Police officers who were near heard a crowd shouting, and as they approached saw Olson above the crowd, holding a placard, and heard him shouting. One of the police officers started toward him, and had to force his way through by pushing aside a ring of eight or ten people, who surrounded these three defendants, to get there. As he approached he heard Olson shout, “Don’t let the police disperse us, don’t let them arrest our speakers, fight for unemployment insurance, fight against unemployment! ’ ’ The police officers testified that the noise was so great they could not hear all that was said. As soon as the first police officer reached defendants he told them to disperse, that they were disturbing the peace and blocking traffic. Olson refused to get down, but went on speaking and said the streets were public and he would speak there if he wanted to. Two other police officers came up and the three pulled Olson down, in spite of much forcible resistance on the part of all three defendants, and the defendants were arrested. Defendant Anderson then threw in the air a handful of cards bearing the words “fight police brutality”. While the arrest was being made the crowd was shouting, “Don’t arrest our speakers!”
The arrest of defendants Olson, Anderson and Snyder was witnessed by defendants Chambers and Yamaguchi. Shortly thereafter, around the corner, but within a distance of 100 feet from the scene of that arrest, Chambers was *771 held up on the shoulders of Yamaguchi and began to make a speech to the crowd on Arcadia Street just east of Main Street, at a place where speech-making was prohibited by ordinance. He was “hollering in a loud manner” and saying, “Fellow workers and comrades, don’t starve, fight”, and also something about the release of Imperial Valley prisoners. Before he spoke further both defendants were arrested. Chambers had a placard on which was printed “Demand release of Imperial Valley prisoners,” and Yamaguchi had a placard reading “Vote Communist.” A police officer told the defendants to go on, and they refused, whereupon they were arrested.
The defendant Beynor was raised on the shoulders of two other persons, near the corner of Arcadia and Los Angeles Streets, at a place where speech-making in the streets was prohibited, and began to speak to a crowd of about sixty-five people. She said rather loudly, “Fellow workers, don’t run, fight,” and “down with the police”. The crowd had been moving on at the direction of the police, and she was trying to stop them. Officer Chambers three times told her and those with her to move on and not obstruct the sidewalk, and another officer told them to move on, but they refused, defendant Beynor saying, “This is our sidewalk and we can make speeches anywhere we want to.”
The evidence was conflicting, but the foregoing statement finds support in that part of it which, as shown by their verdict, the jury believed. We cannot review their determination as to its credibility. These facts are sufficient to warrant a finding that one of the purposes of the assembly in which the defendants participated was to resist by force any attempt to arrest or disperse them and to commit a disturbance of the peace, within the meaning we have already given that term. Some of the defendants went further than others in executing this unlawful purpose, but their guilt does not depend on the consummation of the purpose by all, or even by any, of them. The four facts necessary under section 416 were shown as to each defendant. People v. Wallace, supra, was a similar case, though the evidence against defendants was perhaps somewhat stronger than here, and a conviction was sustained under a statute providing for the punishment of one who ‘■‘seriously disturbs or endangers the public peace”.
*772 The conduct of defendants cannot be justified on the theory that they were merely resisting unlawful arrests. Two of the speech-making episodes occurred at places where such speaking was prohibited and the participators were for that reason subject to arrest. While speech-making, per se, was not prohibited at the other place in question, yet, according to the testimony of the officers, when they approached the defendants there assembled, the crowd overflowed into the street more than halfway to the street-car tracks and it would be hard for anyone to move back and forth, and these defendants were told that they were blocking traffic, but refused to move or quit speaking. Under the circumstances here appearing it" was not only the right but the duty of the police to keep the crowd moving and the streets open for passage. (People v. Wallace, supra. ) We may take judicial notice of the fact, which is not shown by the evidence, that Main Street, where this occurred, is a business street along which there is much automobile and street-car traffic. (Reaugh v. Cudahy Packing Co., 189 Cal. 335, 341 [208 Pac. 145] ; Katz v. Helbing, 205 Cal. 629, 635 [62 A. L. R. 825, 261 Pac. 1062].) The primary purpose of a street is for passage, not for public meetings; and even where public speaking is not prohibited, standing or congregating in the streets in such a manner as to block traffic is prohibited by city ordinances. While a speaker who is not himself obstructing traffic may not always be criminally responsible for such obstruction created by his hearers, yet when he refuses to move on request and insists on holding his meeting at a place where his hearers are blocking traffic, as in this case, he becomes at least an aider and abettor, and a principal in the offense. (Pen. Code, sec. 31.) For such a misdemeanor committed in their presence the police officers could properly arrest defendants, without a warrant or a previous declaration of their intention to do so. (Pen. Code, secs. 836, 841; People v. Wolfgang, 192 Cal. 763 [221 Pac. 927].)
Complaint is made by defendants of the action of the court in the matter of instructions, but little argument is made in support of it. We have examined the instructions given and refused, and find no substantial error in regard thereto.
*773 Defendants sought to prove that the police officers present at and near the Plaza had received instructions from their superiors not to permit the holding of the meeting above mentioned, which had been called to be held at the Plaza, but the offered evidence was excluded as immaterial. There was no error in these rulings. It was the duty of the police, regardless of such orders, to suppress unlawful assemblies. (Pen. Code, sec. 410.) Perhaps the offered evidence might be regarded as corroborative of evidence given by defendants and some of their witnesses that police officers prevented them from going to the Plaza. But if this be accepted as a fact it affords no justification for a breach of the peace by defendants or for an assembly for the purpose of committing such a breach. And if we assume both that the defendants’ original intention was to assemble at the Plaza and that they were prevented from doing so, yet we find sufficient evidence in the record to show that their intention as to the place of the assembly was quite flexible, that they were determined to make speeches at any available place, and that the above-mentioned unlawful purpose entertained by them extended not alone to the Plaza, but to any place where speeches might be made.
The judgments are affirmed.
McLucas, P. J., concurred.